**NAMED INDIVIDUAL MEMBERS OF the SAN ANTONIO CONSERVATION SOCIETY et al., Plaintiffs-Appellants,**

v.

**The TEXAS HIGHWAY DEPARTMENT et al., Defendants-Appellees.**

No. 74–1231.

United States Court of Appeals, Fifth Circuit.

July 5, 1974.

Rehearing Denied Aug. 29, 1974.

Limited Rehearing Granted Aug. 29, 1974.

---

———◆———

John W. Vardaman, Jr., Washington, D. C., for plaintiffs-appellants.

William S. Sessions, U. S. Atty., Edward M. Johnson, Asst. U. S. Atty., San Antonio, Tex., Larry F. York, Lynn Taylor, Asst. Attys. Gen., Samuel D. McDaniel, Austin, Tex., Leonard Schaitman, Judith S. Feigin, Dept. of Justice, App. Sec., Civ. Div., Washington, D. C., for defendants-appellees.

Hubert W. Green, San Antonio, Tex., amicus curiae, for Greater San Antonio Chamber of Commerce.

Crawford B. Reeder, City Atty., San Antonio, Tex., amicus curiae, for City of San Antonio.

Before TUTTLE, COLEMAN and AINSWORTH, Circuit Judges:

AINSWORTH, Circuit Judge:

This much litigated and important environmental case has been in the courts for more than six years and is now before us for the second time. The complaint seeks to enjoin the construction of an expressway which would pass through parklands in the City of San Antonio, Texas. Plaintiffs are named individual members of the San Antonio Conservation Society, and defendants are The Texas Highway Department, an administrative agency of the State of Texas, acting by and through the Texas Highway Commission, consisting of DeWitt C. Greer, Herbert C. Petry, Jr., and Garret Morris, and the State Highway Engineer, J. C. Dingwall, termed "State defendants"; and The Federal Department of Transportation, an administrative agency of the United States of America, acting by and through John A. Volpe, Secretary of Transportation; F. C. Turner, Administrator, Federal Highway Administration; R. R. Bartlesmeyer, Director, Bureau of Public Roads; A. C. Taylor, Regional Administrator, Federal Highway Administration; and J. F. Cary, Division Engineer, Bureau of Public Roads, termed "federal defendants."[1]

The question for decision is whether the congressional enactment of section 154 of the Federal-Aid Highway Act of 1973, severing all federal connection with the San Antonio North Expressway, removes that project from the necessity for compliance with the provisions of the National Environmental Policy Act (NEPA) (42 U.S.C. § 4331 et seq.)[2] and section 4(f) of the Depart-

---

1. Each of said persons is also defendant herein as an individual, for acts outside the authority delegated to that defendant, respectively, by the State of Texas and by the United States of America.

2. Section 102 of the National Environmental Policy Act, 42 U.S.C. § 4332, provides in pertinent part:
   * * * [A]ll agencies of the Federal Government shall—

\* \* \* \* \*

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

ment of Transportation Act (49 U.S.C. § 1653(f)).[3]

Our prior decision (446 F.2d 1013 (1971)) reversed a summary judgment in favor of defendants and held that there had been a failure to comply with the provisions of NEPA and section 4(f) before proceeding with construction of the Expressway. We remanded the case with directions to the district court that it be held until the Secretary of Transportation had complied with his statutory responsibilities after which the district court was to conduct a full review of the matter. In the meanwhile, we ordered that "[c]onstruction shall not proceed until there has been full compliance with the law." *Id.*, at 1029.

The San Antonio North Expressway has been projected since 1959. The disputed segment is approximately six miles long, running about north and south through the middle of the City of San Antonio, and extends between Interstate Loop 410 and Interstate Highway 35. The controversy arises out of the fact that it will traverse portions of the Brackenridge-Olmos Basin Parklands. Its proponents stress the imperative need to solve serious traffic problems of the city; its opponents do not wish it to go through the beautiful Parklands in mid San Antonio. Some time after our initial decision in this case, Congress en-

acted the Federal-Aid Highway Act of 1973. Section 154 of that Act is directly applicable to the Expressway here, and reads in full as follows:

Sec. 154. (a) Notwithstanding any other provisions of Federal law or any court decision to the contrary, the contractual relationship between the Federal and State Governments shall be ended with respect to all portions of the San Antonio North Expressway between Interstate Highway 35 and Interstate Loop 410, and the expressway shall cease to be a Federal-aid project.

(b) The amount of all Federal-aid highway funds paid on account of sections of the San Antonio North Expressway in Bexar County, Texas (Federal-aid projects numbered U 244(7), U 244(10), UG 244(9), U 244(8), and U 244(11)), shall be repaid to the Treasurer of the United States and the amount so repaid shall be deposited to the credit of the appropriation for "Federal-Aid Highways (Trust Fund)". At the time of such repayment the Federal-aid projects with respect to which funds have been repaid and any other Federal-aid projects located on such expressway and programed for expenditure on such project, if any, such be canceled and withdrawn from the Federal-aid

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
(iii) alternatives to the proposed action,
(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

3. 49 U.S.C. § 1653(f) reads as follows:
(f) It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites. The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior,

Housing and Urban Development, and Agriculture, and with the States in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of the lands traversed. After August 23, 1968, the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.

highway program. Any amount so repaid, together with the unpaid balance of any amount programed for expenditure on any such project shall be credited to the unprogramed balance of Federal-aid highway funds of the same class last apportioned to the States, respectively. The amount so credited shall be available for expenditure in accordance with the provisions of title 23, United States Code, as amended.

It is undisputed that in conformity with section 154 the State of Texas has returned to the Federal Government all federal-aid funds which it received on account of the Expressway and that it will receive no other federal funds in the future to aid in its construction. All funds received have been restored to the Federal Government and reapportioned among the States. By congressional enactment the Expressway is now entirely a state-financed project.

Upon the passage of section 154 the Federal Government and the State of Texas both moved the district court to dismiss plaintiffs' suit on the ground that removal of all federal funding by Congress exempted the project from compliance with the environmental provisions of NEPA and section 4(f). Plaintiffs contended, however, that passage of section 154 did not exempt the Expressway from the requirement that state and federal officials comply with federal environmental statutes specifically designed to protect parklands, especially NEPA and section 4(f). Plaintiffs argued that these statutory requirements are still applicable (1) because the Expressway would traverse an area in which U. S. Army Corps of Engineers' approval would be required, thus constituting a "major federal action" under 42 U.S.C. § 4332(2)(C) and necessitating an environmental impact statement; (2) because the Expressway was only a small portion of a larger federal-aid network and inextricably related thereto; (3) because it would cross the

San Antonio River said to be navigable and for which a U. S. Coast Guard permit would be required, another "major federal action"; and (4) if section 154 did exempt the project, it violated the due process clause of the U. S. Constitution.

The district court ruled adversely to the plaintiffs on all of these issues and held that the San Antonio North Expressway was exempt from the requirements of the federal environmental laws by virtue of the congressional enactment of section 154, which was not unconstitutional. Summary judgment was granted in favor of defendants and plaintiffs bring this appeal. A large volume of evidence, affidavits, depositions, and exhibits was filed by the parties in connection with the motions, and there does not appear to be any serious dispute as to the facts. It is the law as to which the parties have stressed their principal arguments and on which they differ.

We stayed the district court order pending consideration of this appeal.

I.

Plaintiffs contend that section 154 does not in its terms specifically exempt the North Expressway from NEPA, section 4(f) or any other federal law, and the fact that the North Expressway is now exclusively a Texas state highway project is not dispositive of the environmental issues. They argue that if Congress intended this result it should have expressly stated it in section 154.

Following this premise the plaintiffs urge that the Expressway will pass through the San Antonio Channel Improvement Project over which the Army Corps of Engineers has jurisdiction, such as, for example, the Olmos Dam and Reservoir situated in the Olmos Basin Parklands which they aver are portions of the Channel Improvement Project.[4] Plaintiffs contend that the

---

4. The Olmos Reservoir is not included in the Channel Improvement. *See* H.R.Doc.No. 344, 83d Cong., 2d Sess. 46, 49 (1954). The

Expressway therefore passes through the San Antonio Channel Improvement Project only at the crossing of the San Antonio Riv-

State Highway Department must obtain the Army Corps' approval for the Expressway to cross the San Antonio River at Josephine Street and also to traverse the Olmos Dam and Reservoir area. They aver that the prior 1968 approval thereof by the Army Corps is outdated because there have been material changes in the design of the Expressway since that time. Finally they contend that the Army Corps' approval will constitute a "major federal action" and thereby trigger the provisions of NEPA relative to furnishing an environmental impact statement. The defendants, Federal and State Governments, respond that the plain language of section 154 as well as the legislative history make it clear that Congress intended to exempt the North Expressway from the environmental requirements of federal law. They contend that Army Corps' approval of the project insofar as the river crossing at Josephine Street and traversing the Olmos Dam and Reservoir are concerned is not required by statute, regulation, or otherwise and that the Corps has no authority to approve or disapprove the Expressway.

■ We agree with defendants. Section 154(a) clearly states that "Notwithstanding any other provisions of Federal law or any court decision to the contrary, the contractual relationship between the Federal and State Governments shall be ended . . . and the expressway shall cease to be a Federal-aid project." (Emphasis added.) If Congress had not intended to exempt the Expressway from the environmental statutes, there would have been no purpose in passing the legislation. We cannot believe that Congress intended a vain and useless act. Any doubt about the matter, however, is fully resolved by the legislative history which shows without question that Congress drew the bill with the evident purpose of exempting the Expressway from the provisions of federal environmental laws including NEPA and section 4(f).[5] The debates in the Senate and House disclose this unmistakably, as do the reports of the Senate and House Committees.[6] Federal

---

er and Josephine Street, and there is no project right of way in this area.

5. Section 4(f) requirement is no longer in the case since section 154 eliminated all federal funds on the Expressway and approval of the Secretary of Transportation is thus no longer required. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 407, 411, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

6. See the Majority Report, Senate Public Works Committee, in pertinent part as follows:

TERMINATION OF FEDERAL-
AID RELATIONSHIP, SAN
ANTONIO FREEWAY

The San Antonio North Expressway would be terminated as a Federal-aid project and Federal funds programed for the State of Texas for that project would be returned to the United States Department of Transportation for reapportionment among the States. While congressional termination of Federal involvement in such projects is not unprecedented, the Committee recognizes that this is an unusual action and believes it is warranted only because of unusual circumstances.

The project involves a non-Interstate urban expressway located wholly within the limits of the City of San Antonio which was planned and requested by that city in 1959. The State obtained initial route approval from the Federal Highway Administrator, purchased all rights-of-way, and completed all relocation with approximately $7 million in State and local funds prior to changes in Federal law which later involved it in legal controversy.

The Secretary approved the letting of construction contracts prior to recent Federal court decisions defining the standard by which the administrative approval was to be reviewed. Thus the project has been affected twice by subsequent changes in Federal law and procedures preventing its completion as a Federal-aid project.

As a result, $4 million in construction has been deteriorating and contractors have claimed an additional $4.5 million in damages against the State of Texas. Since the State and municipality have indicated the desire to complete the project with wholly local financing, the Committee believes that it would be proper to allow them to do so.

The Committee's recommendation is not intended to be an adverse comment on the Fifth Circuit Court of Appeals decision of August 5, 1971, setting forth the administrative procedures required of the Secre-

control and involvement thus came to an end with enactment of section 154.[7]

■ Nor was approval of the Expressway by the Army Corps of Engineers necessary so as to constitute a "major federal action" and trigger the provisions of NEPA relative to the requirement of an environmental impact statement before the Expressway can proceed. The Olmos Dam and Reservoir areas and the Josephine Street crossing area are not within Corps jurisdiction or authority. No rights of way have been acquired in the area.[8] As the Corps' witness testified, it would not be able to approve the Expressway plans because there is no Corps project there at the moment.[9] The Corps' opinion was sought by the Texas Highway Department as to whether the project would cause any adverse effect on flood control, and the state was informed that there was no objection though it was not something within the right of the Corps. to approve or disapprove. It does not appear that there is any legal require-

tary of Transportation in approving Federal-aid projects, nor would it prevent future litigation in State court. Its only effect would be to ratify the action of the Secretary of Transportation in accepting the Federal funds already returned by the State and to terminate the Federal-State relationship on the project.

The Committee heard extensive evidence about the project, studied the proposed route and is satisfied that it would not involve significant damage to recreational areas.
S.Rep.No.93–61, 93d Cong., 1st Sess. 23, 54–56 (1973).
(See also Senator Buckley's individual views in opposition to passage of the bill added to the Senate Report in which he urges rejection because it would have an effect on NEPA and section 4(f).)
The reports of both the Senate and House Committees on Public Works in 1972 when the bill was pending are to the same effect. They contain the following significant language:
    Prior to granting such approval the Committee studied the proposed route and is satisfied that it does not involve significant damage to recreational areas.
S.Rep.No.92–1081, 92d Cong., 2d Sess. 42, 43 (1972); H.R.Rep.No.92–1443, 92d Cong., 2d Sess. 33 (1972).
See also Hearings on S. 502 Before Subcomm. on Transportation of the Senate Public Works Comm., 93d Cong., 1st Sess. 372–481 (1973); Hearings on 1973 Highway Legislation (Future Highway Needs) Before Subcomm. on Transportation of the House Public Works Comm., 93rd Cong., 1st Sess. (1973); S.Rep.No.93–61, 93d Cong., 1st Sess. (1973); 119 Cong.Rec.S. 4934–S. 4943 (daily ed. March 15, 1973); 119 Cong.Rec. H. 7418 (Aug. 3, 1973).

The Senate debate in 1972 and 1973 also revealed quite clearly that the purpose of the proposed legislation was to exempt the Expressway from environmental control. See Senator Nelson's incorporation in the Congressional Record of memorandum of opponents' attorney, Mr. Vardaman; 118 Cong. Rec.S. 14843 (daily ed. September 13, 1972); also Senator Buckley's attempt to delete the provisions relative to the San Antonio Expressway from the Federal-Aid Highway Bill; 118 Cong.Rec.S. 14839–S. 14846 (daily ed. September 13, 1972); 119 Cong.Rec.S. 4724, S. 4726 (daily ed. March 14, 1973); 119 Cong.Rec.S. 4934–S. 4943 (daily ed. March 15, 1973). See also Hearings on 1973 Highway Legislation (Future Highway Needs) (93–5) Before the Subcommittee on Transportation of the Committee on Public Works of the House of Representatives, 93d Cong., 1st Sess. (March 19–23, 1973).

7. Cf. Ely v. Velde, 4 Cir., 1974, 497 F.2d 252.

8. Corps regulations (33 C.F.R. § 208.10 et seq.) require approval only if construction is proposed within the limits of the project right of way. Thus they are inapplicable here.

9. In the deposition of George Demeritt, Corps of Engineers, the following testimony is of interest on the question of Corps' approval of the project:
    BY MR. ROSENBERG:
    Q. Presuming that you were to receive the final plans for the Josephine area, what would be the basis for your review in point, if you received these plans today?
    BY MR. DEMERITT:
    A. We would review them based on the latest study plan that we would have for the Corps project, which, at present, is the preliminary plans and determine whether our floodway could—they could be incorporated into our floodway plan.
    We would make any suggestions we might have that might assist us in our plan, but we would not be able to approve them, because we have no project there at the moment.

ment that the state obtain Corps' approval.

Thus this case differs from those cited by plaintiffs where federal official approval was necessary, being required by statute, such as Citizens Committee for Hudson Valley, S.D.N.Y.1969, 302 F.Supp. 1083, aff'd 2 Cir., 425 F.2d 97, cert. denied, 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970), and Zabel v. Tabb, 5 Cir., 1970, 430 F.2d 199, cert. denied, 401 U.S. 910, 91 S.Ct. 873, 27 L. Ed.2d 808 (1971), where Army Corps of Engineers' approval was statutorily required; also, as in Davis v. Morton, 10 Cir., 1972, 469 F.2d 593, where the Secretary of the Interior was required by statute to ratify or reject leases on Indian reservations. In those cases the Federal Government's role was one of control—or primary jurisdiction—unlike the present case. We find no merit, therefore, in this contention of plaintiffs.

## II.

█ Plaintiffs' second contention is that the Expressway is only a small portion of a larger federal-aid highway network and that even though this segment is to be constructed exclusively with state funds, NEPA must still be complied with by the state. Plaintiffs contend that practically every vehicle using the Expressway will enter or exit from the federal-aid route. Therefore, they argue that the North Expressway is basically a part of one federal-aid highway. Nevertheless, we cannot ignore the fact that Congress, by section 154, specifically determined that the North Expressway was not to be a federal project. The court below also held that the North Expressway has an independent utility of its own. The Federal Government argues that the congressional enactment of section 154 answers and disposes of this issue since there has now been an express congressional determination that the North Expressway is not a part of a larger federal project. It is true that the Expressway connects with other federal interstate highways at the north and south ends thereof, but defendants point out that virtually every road in the country crosses or interchanges with federal-aid highways, and that there are many state-constructed roads which do not form a part of the federal network. The independent utility of the Expressway is found in its connection of downtown San Antonio with the airport and in its primary purpose to relieve the serious traffic problem in central San Antonio. Accordingly, we hold that the Expressway is properly considered independently of the interstate routes with which it connects.

We approve, therefore, the conclusion of the district court (Judge Roberts), well expressed in this regard as follows:

> While the North Expressway will, coincidentally, provide a link in the interstate highway system in San Antonio, this is not to be its major function. Indeed, a primary reason for the perseverance of the State in its efforts to build the North Expressway is the interest the people of San Antonio have in the completion of this project, an interest which derives not from the coincidental function of the North Expressway as a link in the interstate highway system, but rather from the perceived need for the North Expressway as a major artery of intra-urban transportation. Thus, the North Expressway has an "independent utility of its own," Id., which justifies its consideration separately from surrounding projects for purposes of NEPA. The undisputed facts are that this project is to be financed with non-federal funds, designed and built without federal approval or authorization, and to serve primarily local needs. We cannot conceive this project to be a "major Federal action" within the contemplation of 42 U.S.C. § 4332(2)(C). We conclude, therefore, that no environmental impact statement is necessitated by the relationship of the North Expressway to the interstate highway system.

## III.

■ The issue posed by plaintiffs on the navigability *vel non* of the San Antonio River is now moot. The Army Corps of Engineers made its determination on March 8, 1974 in which it concluded that the San Antonio River at the points involved in this case should not be regarded as a navigable water of the United States. Plaintiffs' contention that U. S. Coast Guard approval is required for a bridge to cross the river must, therefore, fail.

## IV.

■ Plaintiffs finally contend that if Congress' enactment of section 154 did exempt the North Expressway such action violates the due process clause of the U. S. Constitution by arbitrarily discriminating against plaintiffs and depriving them of rights under federal environmental statutes. They argue that such fundamental federal rights are available to all other citizens in the nation in similar circumstances and that Congress has without any justification deprived them of such rights. They aver that there is no basis for treating the Expressway any differently "from any other federal-aid highway that threatens urban parklands." (Appellants' brief, p. 40.)

The short answer to this contention is that by virtue of section 154 the North Expressway is no longer a federal-aid highway and that the same Congress which enacted the environmental statutes to which plaintiffs refer, concluded to exempt this segment of highway from these laws. The federal-aid highway program was established by Congress and there is no reason apparent why it cannot decide which roads of the nation shall be included in the system. The environmental statutes were designed to

apply to federal projects. The Expressway is now a state highway, not a federal highway. Its former federal status has been terminated by act of Congress. Congress having spoken in the matter, we see no reason to attempt to override the solemn expression of its will found in the enactment of section 154.

## V.

Plaintiffs have also sought an award of attorneys' fees in this case. They were successful in reversing the judgment of the district court when we first considered the case on appeal and remanded it. After passage of the Federal Aid Highway Act of 1973, they have been unsuccessful both in the lower court and in this court by our decision herein. They request, however, as a minimum that they be awarded attorneys' fees through the first appeal. Obviously such an award would be substantial, considering the circumstances of this litigation.

They seek such an award against the state defendants. The Texas Highway Department, an administrative agency of the State of Texas, acting by and through the Texas Highway Commission, consisting of DeWitt C. Greer, Herbert C. Petry, Jr., and Garret Morris, and the State Highway Engineer, J. C. Dingwall. It is conceded that the federal defendants are immunized from an award of attorneys' fees by provisions of 28 U.S.C. § 2412.[10]

The claim for attorneys' fees is asserted under the so-called "private attorney general" theory in that plaintiffs contend they were effectuating important congressional policy by prosecuting this suit.[11] Plaintiffs do not contend that their efforts in this environmental case have been made inordinately difficult by actions of defendants taken in

---

10. 28 U.S.C. § 2412 reads as follows:
§ 2412. Costs

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, in an amount established by statute or court rule or order, be limited to reimbursing in whole or in part the

prevailing party for the costs incurred by him in the litigation. Payment of a judgment for costs shall be as provided in section 2414 and section 2517 of this title for the payment of judgments against the United States.
As amended July 18, 1966, Pub.L. 89–507, § 1, 80 Stat. 308.

11. It is clear that no such claim can be properly made as to this appeal because our holding is predicated upon the carrying out of congressional policy as enunciated by the Federal-Aid Highway Act of 1973, section 154.

bad faith or for oppressive reasons. There is, accordingly, no indication of unreasonable or obdurate obstinacy or vexatious or groundless conduct.

■■ The state defendants respond that sovereign immunity of the State of Texas by virtue of the Eleventh Amendment to the Constitution has also immunized them from an award of attorneys' fees. The recent case of Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, decided by the Supreme Court on March 25, 1974, is cited by the state defendants in support of this contention. It is apparent that any award for attorneys' fees must be paid from the general revenues of the State of Texas. Under the *Edelman* rationale "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." [12] *Edelman, supra,* 415 U.S. at 663, 94 S.Ct. at 1356. Cases in which attorneys' fees were awarded because of bad faith or obdurate obstinacy, or under the private attorney general theory against non-state defendants, are clearly inapposite. The claim for attorneys' fees, even if limited to services through the first appeal of this case, is, therefore, barred.

### Conclusion

This controversy has now "been resolved in the Halls of Congress, which is the proper place in our system of Government for priority decisions to be made." 446 F.2d at 1024. We therefore defer to the will of Congress and give effect to its solemn enactment. Here the litigation should end.

Affirmed.

TUTTLE, Circuit Judge (concurring in part and dissenting in part):

While I concur fully with the opinion with respect to the claim on the merits, I respectfully dissent with respect to the disposition of the issue of attorneys' fees. Since the trial court did not enter any order with respect to the claim for attorneys' fees, I would remand that issue to the trial court to enable it to determine first the extent to which any award might be a charge against state revenues as distinguished from being merely a charge against the individual named defendants.

## ON PETITION FOR REHEARING AND SUGGESTION OF REHEARING EN BANC

### BY THE COURT:

A member of the Court in active service having requested a poll limited to the question of the allowance of attorney's fees requested in this case, and a majority of the Judges in active service having voted in favor of granting a rehearing en banc solely on this issue, IT IS ORDERED that this issue of the request for attorney's fees shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed.

No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc on the remaining issues [Rule 35 F.R.A.P.; Local Fifth Circuit Rule 12], the petition for rehearing and suggestion of rehearing en banc in all other respects is denied.

---

12. Nor would there be any difference in principle because some of the defendants are state officers rather than the state itself since the state's Eleventh Amendment immunity would still prevail. *See* Edelman, 415

U.S. at 677, 94 S.Ct. at 1362. *See also* Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L. Ed. 389 (1945).