Nazareth GATES et al., Plaintiffs-
Appellees,

and

United States of America, Plaintiff-
Intervenor-Appellee,

v.

John COLLIER, Superintendent, Missis-
sippi State Penitentiary, et al.,
Defendants-Appellants.

No. 73-1790.

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1973.

A. F. Summer, Atty. Gen. of Miss.,
William A. Allain, Asst. Atty. Gen., P.
Roger Googe, Jr., Sp. Asst. Atty. Gen.,
Jackson, Miss., for defendants-appel-
lants.

Roy S. Haber, Native American
Rights Fund, Boulder, Colo., Frank R.
Parker, Jackson, Miss., Edward J. Reil-
ly, New York City, for plaintiffs-appel-
lees.

Michael Davidson, Jesse H. Queen,
Thomas R. Sheran, U. S. Dept. of Jus-
tice, Civil Rights Div., Washington, D.
C., H. M. Ray, U. S. Atty., Oxford,
Miss., for intervenor.

Before TUTTLE, BELL and GOLD-
BERG, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal deals only with the cor-
rectness of the judgment of the trial
court awarding attorney fees to the
plaintiffs in this prisoner suit. It grew
out of, and is a companion case to,
Gates, et al., and United States v. John
Collier, Superintendent, etc., No. 73–
1023, which is under submission to this
Court.

In the original complaint, filed by
counsel now seeking counsel fees, and
later supported by the United States of
America, which intervened in the trial
court the principal allegations were:

There are two classes for whose bene-
fit suit was brought by the named plain-
tiffs: (1) a class composed of *all*
present and future inmates of Mississip-
pi State Prison (Parchman); (2) a
class composed of present and future
*black* inmates of Parchman.

Each class alleged that it was subject-
ed to the deprivation of rights and to
conditions and practices which amounted
to cruel and unusual punishment, that it
was subjected to censorship of its mail
and that it was deprived of the due
process of law in violation of the first,
eighth and fourteenth amendments.

Each class further alleged that it had been deprived of the equal rights under law guaranteed to it by 42 U.S.C.A. § 1981, of the rights, privileges and immunities guaranteed to it by 42 U.S.C.A. § 1983, and had been subjected to a conspiracy to interfere with its civil rights in violation of 42 U.S.C.A. § 1985.

In addition, the class composed of present and future black inmates alleged it was deprived of its fourteenth amendment right to equal protection by virtue of being segregated from other inmates and of being incarcerated under worse conditions than other inmates.

Plaintiffs sought an injunction against the deprivation of such rights during their incarceration and against certain practices and conditions existing at Parchman. Plaintiffs also sought a declaratory judgment that the deprivation of such rights and the continuation of such practices and conditions were unconstitutional.

All parties conducted extensive pretrial discovery proceedings. Plaintiffs' counsel expended considerable time, money and energy gathering proof. His affidavit in the court below details all the hours and services he was forced to expend on plaintiffs' behalf to prosecute a wholly unnecessary action in the face of an unyielding defense. On May 11, 1972, four days before trial, counsel for all parties agreed to waive presentation of evidence in open court and to submit the case on the record including pleadings, stipulations, depositions, interrogatories and answers, offers of proof, factual summaries, proposed trial plans, evidentiary synopses, photographs, exhibits, reports and other documentary evidence assembled by the parties. All of these items were admitted into evidence, *defendants stipulating that they would not contest the facts set forth therein.*

Moreover, the Governor himself, seeking to limit the record, asked the Court: "Isn't there enough of the incriminating facts in these depositions and interrogatories to give the Court adequate grounds to find a conclusion of fact that the first amendment and all other constitutional provisions have been violated . . . ?" The Governor of the State of Mississippi in fact conceded: "We are, in effect, Your Honor admitting that the constitutional provisions have been violated." This was well over a year after the action was brought and years after the major constitutional violations had occurred.

Among the district court's findings, Gates v. Collier, 349 F.Supp. 881 (N.D. Miss.1972), were the following:

1. The policy and practice at Parchman has been and is to maintain a system of prison facilities segregated by race through which black inmates are subject to disparate and unequal treatment. (Finding # 7)

2. The housing units at Parchman are unfit for human habitation. Facilities for the disposal of human waste at all camps are shockingly inadequate and present an immediate health hazard. Contamination of the prison water supply caused by inadequate sewerage has led to the spread of infectious diseases. (Finding # 8)

3. The medical staff and available facilities at Parchman fail to provide adequate medical care for the inmate population. (Finding # 11)

4. All inmates, except those confined in the Maximum Security Unit, are housed in open barracks known as "cages." The risk of personal injury created by cage confinement is increased by (a) defendants' failure to classify inmates, (b) the prison's reliance on inmates rather than trained guards, and (c) the failure of prison authorities to confiscate weapons. (Finding # 12)

5. Armed inmate trusties, selected without objective criteria or uniform standards and insufficiently trained to cope with their duties, perform the primary guard function at Parchman. Apart from abusing their authority and engaging in loan-sharking, extortion and other illegal conduct, the trusties at Parchman have shot,

maimed or otherwise physically maltreated scores of inmates subject to their control. (Findings # 13 and #14)

6. Inmates at Parchman relegated to the punishment side of the Maximum Security Unit have often been placed in the "dark hole" without clothes, hygiene materials or adequate food for periods of 48 to 72 hours. (Finding # 17)

7. Physical brutality is regularly inflicted on inmates by prison authorities. (Finding # 18)

8. Inmates subject to disciplinary action for alleged violations of prison rules are deprived of any semblance of procedural or substantive due process. (Findings # 19 and #20)

9. Illegal censorship of prisoners' mail is commonplace. (Findings # 21)

Following a hearing on the proper form of relief, the court entered judgment on October 20, 1972, Gates v. Collier, 349 F.Supp. 881 (N.D.Miss.1972), restraining defendants and their agents from

"performing, causing to be performed or permitting to continue acts, practices and conditions found to exist in connection with the maintenance, operation and administration of the Mississippi State Penitentiary at Parchman, Mississippi, in violation of the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution." 349 F.Supp. at 898.

The court's judgment, in conformity with its findings and conclusions, specifically enjoined continued constitutional violation and mandated defendants to rectify each unconstitutional condition and practice.

Defendants have appealed from the judgment (Appeal No. 73–1023 before this Court). Having admitted to all the facts and conceding the constitutional violations, defendants have nevertheless appealed from the judgment on the ground that the complaint fails to state a recognized cause of action. Furthermore, defendants continually sought extensions and delays from compliance with the district court's orders. Defendants' submission of plans required by the district court's order have been found to be inadequate even after substantial delays and defendants continue to delay and obstruct any improvement in the conditions at Parchman. Such delays have necessitated the expenditure of additional time and money by plaintiffs' counsel.

On July 25, 1972, while the case was pending before the district court, plaintiffs' counsel moved for an award of attorney's fees and expenses. Defendants opposed the motion. In support of the motion plaintiffs' counsel filed a memorandum of law, an affidavit detailing his hours, the services performed and the expenses incurred, and the affidavits of two experienced attorneys practicing in the same area regarding the reasonableness of the requested fees. Plaintiffs' counsel's affidavit shows the many hours of work required to marshall all the evidence which forced defendants to concede and forego trial.

On February 14, 1973, the district court awarded plaintiffs' counsel $41,750 for services and $10,986.05 for costs and expenses incident to maintenance of the action. The award did not run against the defendants personally or individually but in their official capacities and was directed to be paid from the operating funds of Parchman. The defendants have now appealed from this award of attorney's fees and expenses.

The parties do not dispute the correctness of the trial court's standard for determining whether attorney's fees should be awarded; the court based its decision on a finding that the defendants' conduct was violative of the plaintiffs' constitutional rights and that their unlawful conduct was "unreasonably and obdurately obstinate."[1]

---

1. While we adopt the standard agreed to by the parties and applied by the district court, we note that different standards than 'unreasonably and obdurately obstinate' have

There can be no question about the adequacy of the trial court's findings to warrant the awarding of attorney's fees:

"In the instant case, we have no difficulty in finding that defendants' actions were unreasonable and obdurately obstinate. From commencement of the suit on February 8, 1971, defendants staunchly denied the existence of unconstitutional practices and conditions at Parchman. Defendants continued to adhere to this position at several lengthy evidentiary hearings of an interlocutory nature. The position thus consistently maintained by defendants compelled plaintiffs' attorney to expend time and expenses which otherwise would not have been incurred. Consequently in preparation of plaintiffs' case, plaintiffs' attorney engaged in extensive pre-trial discovery, made numerous trips to Parchman, interviewed hundreds of inmates, and submitted a plethora of motions and accompanying legal memoranda. We are convinced that only because of the overwhelming magnitude of evidence gathered by plaintiffs' attorney in cooperation with the Department of Justice in support of the allegations contained in the complaint did defendants in effect recognize the futility of a full evidentiary hearing and submit the case on a virtually agreed record.

\*   \*   \*   \*   \*   \*

"As set forth in this court's Findings of Fact, the unconstitutional conditions and practices at Parchman have long existed as a result of public and official apathy, despite the notoriety of matters affecting prison administration stemming from prior reports to the State Legislature and widespread publicity of the news media. The court in its previous findings simply declared facts that were well documented and known to all interested in the subject. Constitutional rights of inmates may not be thwarted or ignored because of frequent changes in prison personnel and officials. We now hold that the state of the law in the area of prisoner rights was sufficiently settled so that it should have been unnecessary for this action to be brought; this suit was necessary only because of defendants' unreasonable refusal to comply with accepted constitutional principles. We are further convinced that the unnecessary delay, extraordinary efforts and burdensome expenses incurred incident to the resolution of this case were occasioned because of defendants' maintenance of their defense in an obdurately obstinate manner. Thus, plaintiffs' attorney is entitled to reasonable fees and expenses."

See on the general issue of attorney's fees in civil rights litigation Horton v. Lawrence County Board of Education, 449 F.2d 793 (5th Cir. 1971); Lee v.

occasionally been found applicable by federal courts. One such standard is that plaintiff's counsel is entitled to attorneys' fees on the private attorney general theory.

The private attorney general theory is derived from the Supreme Court opinions in Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263; and Mills v. Electric Auto-Lite Co., 396 U.S. 375 at 389–397, 90 S.Ct. 616, 24 L.Ed.2d 593. The theory is that private plaintiffs have aided in effectuating important Congressional and public policies. Attorneys fees have not only been granted in suits brought under the Civil Rights Acts, 42 U.S.C.A. §§ 1981, 1982, 1983, e.g., Sims v. Amos, 336 F.Supp. 924 (M.D.Ala.1972) (3 judge court) (§ 1983);

Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972) (§ 1981); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971) (§ 1982); Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972) (§ 1982); Jinks v. Mays, 350 F.Supp. 1037 (N.D.Ga.1972) (§§ 1981–1983); N.A.A. C.P. v. Allen 340 F.Supp. 703, 708–710 (M. D.Ala.1972) (§ 1983), but also under various other federal statutes, e.g., Yablonski v. United Mine Workers, 151 U.S.App.D.C. 253, 466 F.2d 424 (1972), cert. denied, 412 U.S. 918, 93 S.Ct. 2729, 37 L.Ed.2d 144 (1973) (Labor-Management Recording and Disclosure Act); La Raza Unida v. Volpe, 57 F.R.D. 94 (N. D.Cal.1972) (various federal transportation statutes).

Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971).

The only issue of concern in this appeal arises from the fact that the trial court fashioned its decree for attorney's fees in a manner that caused the defendants to challenge this award as being prohibited by the principle of sovereign immunity and, by analogy, to the eleventh amendment to the United States Constitution. See Hans v. State of Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1889). This contention is a familiar one in cases in which courts have entertained actions against state officials, boards and commissions in equity. See, e.g., Orleans Parish School Board v. Bush, 242 F.2d 156 (5th Cir. 1957) and the many school cases subsequently decided by this Court.

In Sims v. Amos, 336 F.Supp. 924, 340 F.Supp. 691 (M.D.Ala.1972), aff'd., 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972), the District Court for the Middle District of Alabama dealt with the award of attorney's fees and expenses incurred in a suit against the Governor, state legislators, the attorney general and the secretary of state of Alabama. The Court expressly held against the "Alabama State Legislators, the Governor, the Attorney General and the Secretary of State."

In their jurisdictional statement to the Supreme Court, the defendants in Sims stated:

"the award to the plaintiffs of their attorney's fees and expenses incurred and in the taxing of these items as costs against the defendants who are elected state officials sued in their official capacity . . . was tantamount to the award of a money judgment against the State of Alabama in direct violation of the doctrine of sovereign immunity."

The Supreme Court affirmed the judgment of the three-judge district court without opinion. In the California case of La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972), the court noted:

"That federal courts have awarded attorney's fees to successful litigants against state officers without statutory authority cannot be denied. See, e. g., Sims v. Amos, supra, (Governor of Alabama and Secretary of State); Wyatt v. Stickney, 344 F.Supp. 373 (M.D.Ala. decided April 13, 1972), (State regulatory agency). See also, Cooper v. Allen, supra, (Mayor of Atlanta, Georgia); Brewer v. School Board of Norwalk (sic), supra [456 F.2d 943] (school board); Hammond v. Housing Authority & Urban Renewal Agency of Lane County, 328 F. Supp. 586 (D.Or.1971), (municipal housing authority). But of course, the eleventh amendment has been read not to apply to local bodies. Lincoln County v. Luning, 133 U.S. 529, 10 S. Ct. 363, 33 L.Ed. 766 (1890).

"Since we conclude as the court did in Sims that the state may no more immunize an individual from costs incident to an injunction than it may insulate him from the injunction itself, we find that sovereign immunity does not bar an award of attorney's fees against Chief Engineer Legarra. . . . " 57 F.R.D. at 101–102.

This Court has said that in such a suit as this the award of attorney's fees is not an award of damages against the State, even though funds for payment of the costs may come from the state appropriations. In Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970) we said:

"Section 1983 was designed to provide a comprehensive remedy for the deprivation of federal constitutional and statutory rights. The prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement." 427 F.2d at 324.

Although the trial court had the power to assess attorney's fees and expenses against the individual defendants found to have engaged in the unconstitutional conduct,[2] we think it does not vitiate the

---

2. In which event, of course, everyone knows they would be "bailed out" by the State.

award because the trial court prescribed that this part of the costs[3] were to be payable "from funds which the Mississippi Legislature, at its 1973 Session, may appropriate for the operation of the Mississippi State Penitentiary," and were not to be "the personal, or individual, liability of the varied defendants or any of them." See also, the following cases which have dealt with this question: La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972); Brewer v. School Board of City of Norfolk, Va., 456 F.2d 943 (4th Cir. 1972) cert. den., 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136 (1972); Thompson v. Richland Parish Police Jury, 5 Cir., 478 F.2d 1401 [No. 72–3413, June 13, 1973]; Wyatt v. Stickney, 344 F.Supp. 387 (M.D.Ala.1972).

The judgment appealed from is affirmed.

---

3. No contention is made by the appellants that the other elements of the costs of litigation, perhaps quite substantial, could not be taxed in the manner in which the attorney's fees and expenses were charged.