Patricia WELSCH et al.,
Plaintiffs,

v.

Vera J. LIKINS et al.,
Defendants.

No. 4–72–Civ. 451.

United States District Court,
D. Minnesota,
Fourth Division.

May 22, 1975.

---

Luther A. Granquist, Legal Aid, Minneapolis, Minn., for plaintiffs.

Thomas L. Fabel, St. Paul, Minn., for defendants.

## MEMORANDUM ORDER

LARSON, District Judge.

Before the Court is plaintiffs' post-trial motion for the taxation of costs of $5,521.20 for expenses incurred in the successful litigation of this class action suit seeking declaratory and injunctive relief regarding treatment and conditions in six State-owned and operated facilities for the mentally retarded.

### I. BACKGROUND

This suit was brought by six mentally retarded residents of Minnesota State hospitals as representatives of persons who had been judicially committed as mentally deficient persons pursuant to the Minnesota Hospitalization and Commitment Act, M.S.A. § 253A.01 *et seq.*, a civil commitment statute. The defendants are public officials and administrators charged with the responsibility for the care and custody of the plaintiff class

members. They include the Commissioner and Assistant Commissioner of the Department of Public Welfare of the State of Minnesota and the Administrators of the six State hospitals for the mentally retarded.

A twelve day trial was conducted in September and October 1973. In addition to testimony by various professional experts in mental retardation and the presentation of voluminous documentary evidence, the Court, accompanied by counsel for both sides as well as certain administrative personnel, made an unannounced one day tour of Cambridge State Hospital on October 17, 1973.

On February 15, 1974, the Court entered a declaratory judgment that held that persons civilly committed for reasons of mental retardation have a right under both the due process clause of the Fourteenth Amendment and the Minnesota Hospitalization and Commitment Act, to minimally adequate treatment designed to afford each of them a realistic opportunity to be cured or at least to improve upon his or her mental and physical condition. *Welsch v. Likins,* 373 F. Supp. 487 (D.Minn.1974). The Court also held that these persons are entitled under the due process clause to have the appropriate State officials conduct good faith efforts to place the plaintiffs in the least restrictive conditions feasible and consonant with their physical and mental condition. Finally, the Court held that certain practices and conditions at the Cambridge State Hospital may be in violation of plaintiffs' constitutional rights under the cruel and unusual punishment clause of the Eighth Amendment and the due process clause of the Fourteenth Amendment.

Following the issuance of the declaratory judgment, the Court met with the parties to attempt to resolve some of their differences and held post-trial proceedings on May 10, 1974. At that time, defendants offered testimony along with depositions and exhibits to indicate their plans for reforms. The Court on October 1, 1974, issued an Order and an extensive Memorandum setting forth the steps defendants should take to remedy the conditions at Cambridge. The Court retained jurisdiction over this case and has subsequently received numerous reports and correspondence setting forth the efforts of the defendants to comply with this Order.

The plaintiffs were and continue to be ably and conscientiously represented by the Legal Aid Society of Minneapolis, Inc. The defendants were and continue to be ably represented by the Office of the Attorney General of Minnesota

Attorneys for the plaintiffs bring the present motion to recover the costs incurred in the successful litigation of this case. The Court notes that no claim for attorneys' fees is made in this motion. These costs are itemized in the affidavit of Luther Granquist, one of plaintiffs' attorneys and the numerical correctness of the amounts stated therein is not challenged by the defendants.

Rather the defendants challenge this motion on three separate and independent grounds. First, they argue that although the State of Minnesota is not a named defendant, the State will in all likelihod pay any of the costs assessed by the Court against the named defendants. The defendants assert that the Eleventh Amendment precludes Federal courts from assessing costs of litigation against a State officer in circumstances in which the State would actually pay the assessed amount. Second, defendants argue that apart from the Eleventh Amendment, all requests for costs should be denied as an exercise of discretion. Third, defendants urge that some of the specific requests for costs should be denied or reduced.

## II. ELEVENTH AMENDMENT

In considering the Eleventh Amendment question, the Court turns initially to *Fairmont Creamery Co. v. State of Minnesota,* 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927), in which the Supreme

Court allowed costs to be taxed against the State of Minnesota. Minnesota asserted that despite a judgment against it, costs could not be taxed against a sovereign state. Writing for a unanimous Court, Mr. Chief Justice Taft rejected this argument and stated that the consistent practice of the Supreme Court was to tax costs against the losing party even if it were a State. 275 U.S. at 74–77, 48 S.Ct. 97. He stated:

"Though a sovereign, in many respects, the state when a party to litigation in this Court loses some of its character as such." *Ibid.* at 74, 48 S. Ct. at 99.

More recently in *Sims v. Amos*, 409 U. S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972), the Supreme Court summarily affirmed judgments awarding "plaintiffs' costs," "clerk costs" and attorneys' fees against officials of the State of Alabama including the Governor, the Attorney General and the Secretary of State. In the decision below, reported at 336 F. Supp. 924 and 340 F.Supp. 691, a three judge court held that reapportionment plans prepared by the Attorney General failed to met constitutional standards and accepted a plan presented by the plaintiffs. The Court found that the plaintiffs served in "the capacity of 'private attorneys general' [in] seeking to enforce the right of the class they represent" and awarded costs and attorneys' fees. 340 F.Supp. at 694.[1]

In that decision the sovereign immunity or Eleventh Amendment issue was not discussed. However, in the jurisdictional statement of the defendants in their appeal to the Supreme Court, the defendants did raise the fact that an award against the State officials acting in their official capacity was "tantamount" to a money award against the State in violation of the doctrine of sovereign immunity. See *Taylor v. Perini*, 503 F.2d 899, 910 (6th Cir. 1974) (dissenting opinion), and *Gates v. Collier*, 489 F.2d 298, 302 (5th Cir. 1973).

In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court determined that Federal courts lacked the power to order State welfare administrators to reimburse welfare recipients for welfare grants unlawfully denied in the past. The Court held that Federal courts are empowered to grant prospective relief, see *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), but may not require retroactive monetary damage awards. After discussing the historical background and a number of cases interpreting the Eleventh Amendment, the Court concluded:

"Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the 11th Amendment." 415 U.S. at 663, 94 S.Ct. at 1356.

However, the Court also noted:

"As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night. The injunction issued in *Ex parte Young* was not totally without effect on the State's revenues, since the state law which the

---

1. In *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court overruled an award of attorneys' fees. The Court held that the "private attorney general" exception to the established American practice of not awarding attorneys' fees to the successful litigant had been erroneously approved by the Court of Appeals since only Congress could authorize an exception to the "American Rule."

The Court stated at 421 U.S. at 270, 95 S.Ct. at 1628, that the Supreme Court's summary affirmance in *Sims v. Amos*, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972) could not "be taken as an acceptance of a judicially created private attorney general rule. The District Court in *Sims* indicated that there was an alternative ground available—the bad faith of the defendants—upon which to base the award of fees."

Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions. Later cases from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in *Ex parte Young*." 415 U.S. at 667, 94 S.Ct. at 1357.

*Edelman* did not decide whether the Eleventh Amendment precludes a Federal court from assessing the costs of litigation against a State officer in circumstances in which the State would likely pay the assessed amount, the precise issue before this Court. What *Edelman* did was to raise anew the question whether the Eleventh Amendment bars any and all monetary awards against a State.

Subsequent decisions in the Courts of Appeal have split over the issue of whether the Eleventh Amendment as interpreted in *Edelman* bars the awarding of costs and attorneys' fees against State defendants.

The First Circuit in *Boston Chapter N.A.A.C.P., Inc. v. Beecher*, 504 F.2d 1017 (1974), allowed an award of costs on appeal acknowledging that "an award of court costs cannot be neatly categorized as either prospective or retroactive." 504 F.2d at 1029. The Court found that:

". . . costs are not awarded for accrued liability, but rather are assessed for certain litigation expenses in accordance with the generally mechanical provisions of Rule 39 . . . . In this sense allocation of costs is an incident to the court's jurisdiction and judgment in the main action." *Ibid.*

See also, *Souza v. Travisono*, 512 F.2d 1137 (1st Cir. 1975).

The Second Circuit in *Jordan v. Fusari*, 496 F.2d 646, 650 (1974) (attorneys' fees), and *Class v. Norton*, 505 F.2d 123 (1974) (costs and attorneys' fees), held that the Eleventh Amendment did not bar awards directed against State officials where the State might well supply the resources to satisfy the award.

The Ninth Circuit in *Brandenburger v. Thompson*, 494 F.2d 885 (1974), handed down the same day as *Edelman v. Jordan, supra* (March 25, 1974), determined that the Eleventh Amendment did not bar an award of attorneys' fees against a State official acting in his or her official capacity. The Ninth Circuit relied upon the summary affirmance in *Sims v. Amos, supra*, and its previous decision on this issue in *La Raza Unida v. Volpe*, 57 F.R. D. 94 (N.D.Cal.1972), *aff'd* 488 F.2d 559 (9th Cir. 1973).

The Fifth Circuit affirmed an award of attorneys' fees and costs in *Gates v. Collier*, 489 F.2d 298 (1973), a pre-*Edelman* decision. It based its decision on *Sims v. Amos, supra*, and stated:

". . . in such a suit as this the award of attorney's fees is not an award of damages against the State, even though funds for payment of the costs may come from the state appropriations." 489 F.2d at 302.

In a subsequent post-*Edelman* decision, *Named Individual Members of the San Antonio Conservation Society v. Texas Highway Department*, 496 F.2d 1017 (5th Cir. 1974), the Court denied a request by the plaintiffs for attorneys' fees. The issue of costs was not discussed. Judge Ainsworth, writing the opinion for the Court, held that the rationale of *Edelman* barred the claim for attorneys' fees. Judge Tuttle dissented on the attorneys' fee issue.

A rehearing *en banc* was granted on the attorneys' fee issue in *Named Individual Members*, 496 F.2d at 1062, and the entire Fifth Circuit heard oral argument on this issue on October 2, 1974. That opinion is currently under advisement.

The Third Circuit in *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (1974), petition for cert. filed November 8, 1974, and *Goode v. Rizzo*, 506 F.2d 542 (1974), held that the Elev-

enth Amendment bars an award of attorneys' fees against the State. There was no discussion of the issue of awarding costs in either case. In a subsequent District Court case, *Downs v. Department of Public Welfare*, 65 F.R.D. 557 (E.D.Pa.1974), Judge Green held that the Eleventh Amendment and the rationale of *Edelman* did not preclude any remedial monetary relief from the State treasury in terms of granting awards of attorneys' fees. He stated:

> "*Skehan* and *Goode* did not squarely confront the Third Circuit with such an award and thus are not controlling. We believe *Edelman* left open the propriety of an award, such as that described above, in a situation where private counsel has vindicated a plaintiff's federal statutory and/or constitutional rights." 65 F.R.D. at 560–61.

The Sixth Circuit in *Jordon v. Gilligan*, 500 F.2d 701 (decided July 18, 1974), and *Taylor v. Perini*, 503 F.2d 899 (decided October 3, 1974) (Judge Edwards dissenting), held that the Eleventh Amendment bars an award of attorneys' fees. However, the Court in *Jordan v. Gilligan* indicated that *Fairmont Creamery Co. v. Minnesota, supra,* allowed the taxing of costs against the states. 500 F.2d at 709 n. 13. Both *Jordon v. Gilligan, supra,* and *Taylor v. Perini, supra* are presently before the United States Supreme Court on petitions for writs of certiorari.

In *Milburn v. Huecker*, 500 F.2d 1279 (decided August 5, 1974), the Sixth Circuit refused to uphold a denial of attorneys' fees directed against the Commissioner of Economic Security of the State of Kentucky. The Court in remanding the attorneys' fee issue to the District Court, did not discuss the Eleventh Amendment or the decision in *Edelman* as it might apply to that issue. However, the Court earlier in that opinion denied the request of the plaintiff for a monetary award for past due welfare benefits based upon the *Edelman* decision.

The Eighth Circuit has not considered a post-*Edelman* case on the issue of whether the Eleventh Amendment bars an award of costs or attorneys' fees to a successful litigant in an action in which State officials are a party. In *Fowler v. Schwarzwalder*, 498 F.2d 143 (8 Cir. 1974), the Court reversed and remanded a District Court order denying an award of attorneys' fees against several city employees in a suit brought under the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983. The District Court had granted plaintiffs' motion for costs but had denied the request for attorneys' fees. The Eighth Circuit, however, did not discuss the Eleventh Amendment as none of the employees named as defendants were State employees nor was the State a party.[2]

---

2. The remand for consideration of attorneys' fees in *Fowler* was based upon language set forth by the Supreme Court in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), and *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The Eighth Circuit, along with other courts, *Knight v. Auciello*, 453 F.2d 852 (1st Cir. 1972), and *Lee v. Southern Homes Sites Corp.*, 444 F.2d 143 (5th Cir. 1971), had interpreted *Mills* and *Newman* as support "for the establishment of new guidelines for the award of attorney's fees to encourage litigation which vindicates certain strong Congressional policies." 498 F.2d at 144.

As discussed above, see footnote 1, the Supreme Court in *Alyeska Pipeline Service Company v. Wilderness Society, supra,* deter-

mined last week that an award of attorneys' fees based on the private attorney general exception was improper. The Court at 421 U.S. 240, 270, n. 46, 95 S.Ct. 1612, n. 46, listed a number of Federal court decisions in which the Supreme Court felt the private attorney general exception had been erroneously employed to award attorneys' fees including *Fowler*.

However, this Court notes that the Supreme Court did not consider the issue of the taxing of costs in *Alyeska*. It left standing the opinion of the Court of Appeals, reported at 161 U.S.App.D.C. 446, 495 F.2d 1026, 1028 (1974), approving the request for taxation of costs. This Court concludes, therefore, that *Alyeska* does not and should not substantially affect this Court's deliberations on the taxation of costs issue.

This Court is well aware of the broad sweep of the Supreme Court in *Edelman* breathing new life into Eleventh Amendment immunity. See *Jane Doe v. University of Minnesota*, No. 4–73–Civil 491 (D.Minn. November 7, 1974). However, this Court finds that neither the holding nor the dicta in *Edelman* requires the conclusion that the Eleventh Amendment bars the taxation of costs in an action properly before a Federal district court.

*Edelman* was concerned with large retroactive payments of welfare benefits. The Supreme Court characterized the award of past welfare benefits wrongfully withheld in that case as "indistinguishable in many aspects from an award of damages against the State." 415 U.S. at 668, 94 S.Ct. at 1358. The Court indicated its concern that this monetary award would "invariably mean there is less money available for payments for the continuing obligation of the public aid system." 415 U.S. at 666, n. 11, 94 S.Ct. at 1357.

This Court characterizes an award of costs as an incident of litigation. *Fairmont Creamery Co. v. Minnesota, supra; Boston Chapter N.A.A.C.P., Inc. v. Beecher, supra; Taylor v. Perini*, 503 F.2d 899, 909 (6th Cir. 1974) (Judge Edwards dissenting). The awarding of costs is often merely a mechanical act of a clerk placing a small portion of the expense of trial upon the losing party. *Boston Chapter N.A.A.C.P., Inc. v. Beecher, supra*. It is at worst an "ancillary effect" of a suit properly brought to litigate a petitioner's claim for relief. *Taylor v. Perini, supra* (Judge Edwards dissenting). An award of costs is not an award of damages against the losing party. *Gates v. Collier, supra*.

As set forth above, the Supreme Court in *Edelman* recognized that injunctive actions against the State, *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908), are often not without effect on State revenues. The Court also noted:

". . . the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night." 415 U.S. at 667, 94 S.Ct. at 1357.

This Court therefore finds that *Edelman* does not bar the awarding of costs in this case. The Court finds controlling on this issue the decisions in *Fairmont Creamery Co. v. Minnesota*, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927), and *Sims v. Amos*, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). Both of these decisions allowed the awarding of costs against a State or State officials. The Court therefore concludes that the Eleventh Amendment does not bar the award of costs in the present case.

### III. DISCRETION OF THE TRIAL COURT TO AWARD COSTS

It is clear that it is within the sound discretion of the trial court to grant, modify or deny requests for the taxation of costs. 28 U.S.C. § 1920; *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Farmer v. Arabian Oil Co.*, 379 U.S. 227,, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); *Linneman Construction, Inc. v. Montana-Dakota Utilities Co., Inc.*, 504 F.2d 1365 (8th Cir. 1974). Although "items proposed . . . as costs should be given careful scrutiny," *Farmer*, 379 U.S. at 235, 85 S.Ct. at 416, "the decision of the trial court will only be reversed for an abuse of discretion." *Linneman*, 504 F.2d at 1370. The Court also notes that fees and costs are taxable against the United States within the limits set forth in 28 U.S.C. § 2412.

Defendants here urge that plaintiffs' claim for costs should be denied in its entirety. They assert three specific grounds in support of this argument:

1. The State's conduct throughout this litigation has been exemplary and there is no evidence of bad faith on the part of the defendants in their defense.

2. The plaintiffs have no specific financial need for the reimbursement of the costs incurred as their expenses were met by voluntary contributions.

3. There is a need for legislative cooperation to implement the relief set forth in this Court's earlier orders.

 There is no substantial dispute that the defendants acted in good faith in this litigation or as to the plaintiffs' financial status. If bad faith on the part of the losing party or the financial need of the successful party were the sole criteria for the awarding of costs, actual awards of costs would be uncommon. However, as indicated above, the taxing of costs is merely an incident of litigation and are routinely taxed by the clerk against a losing party. See, 6 *Moore's Federal Practice*, Para. 54.70[1] at 1301. Awards of costs are not to be construed as punitive in nature. "They are not comparable to an award of damages or of retroactive benefits." *Taylor v. Perini*, (dissenting opinion of Judge Edwards), 503 F.2d at 909. Therefore, the Court concludes that defendants' first two grounds stated in opposition to the request for the taxation of costs are not relevant in this case.

The Court is conscious of the need for cooperation between the legislative and executive branches of the State of Minnesota and all the parties to this lawsuit, including the Court, in implementing the constitutionally required standards of care for the plaintiff class. See *Welsch v. Likins*, No. 4–72–Civil 451 (D.Minn. October 1, 1974), pp. 33–34. The Court also recognizes the efforts made by all parties to meet the minimally adequate standards set forth in that Order.

 The Court finds that the plaintiffs are acting within that spirit of cooperation in bringing this good faith request for the taxation of costs and the defendants are likewise acting in good faith in their opposition to this mo-

tion. The Court, also acting in this spirit, cannot reject this request by the plaintiffs merely on the unfounded speculation that its determination would cause a serious rift in the common efforts to meet the constitutionally required standards of care for the mentally retarded.

## IV. CHALLENGES TO SPECIFIC REQUESTS OF THE PLAINTIFFS

The defendants also assert that certain of the plaintiffs' requests are "more obviously inappropriate than others," Defendants' Memorandum at p. 9, and urge that they should be disallowed. Before considering these claims individually, the Court notes that the plaintiffs are not requesting any reimbursement for the travel or office expenses of plaintiffs' counsel nor, as noted above, are any attorneys' fees claimed.

 The defendants first suggest that none of the expenses incurred by plaintiffs' experts in their pretrial observation at Cambridge Hospital should be recovered. Although pretrial investigation expenses and expert witness fees are not taxed as a matter of course, 6 *Moore's Federal Practice*, Para. 54.77 [5.–3] at 1734 and Para. 54.77[8] at 1751, the Court has considerable discretion to award these fees when it feels they were particularly necessary under the circumstances of the individual case. See *Farmers v. Arabian Oil Co., supra,* and *Linneman Construction Inc. v. Montana-Dakota Utilities Co., Inc., supra.*

The defendants also assert that any witness expenses in excess of those specifically allowed under 28 U.S.C. § 1821 should be disallowed. That section authorizes witness fees of $20 per day for attendance, $16 per day for subsistence, and $0.10 per mile as a mileage fee.

 The Court finds that the motion of the plaintiffs for the taxation of costs to reimburse the out-of-pocket expenditures incurred for plaintiffs' expert wit-

ness expenses set forth in paragraphs 5–11 of the Affidavit of Luther Granquist and the expenses incurred by the expert witnesses as a result of their pre-trial observations of the conditions at Cambridge State Hospital set forth in paragraphs 20–25 of the Granquist Affidavit should be granted. The Court finds that these expert witnesses were an indispensible part of this trial. Their experience in governmentally operated programs for the retarded was clearly reflected in their testimony and added greatly to the Court's knowledge. This experience, coupled with their observation of the conditions at Cambridge, enabled the Court to fashion not only necessary but practical requirements to relieve the conditions that exist there.

The Court in reviewing the costs as outlined above finds them appropriate and not excessive and therefore grants them in full.

Defendants also argue that various deposition expenses set forth in paragraphs 12–15 of the Granquist Affidavit should be disallowed. The Court finds that all of these depositions were either used at trial or were entered into evidence. A number of these depositions were taken after the twelve day trial of September and October 1973. However, the question of the proper form of relief was not determined in the Court's initial opinion of February 15, 1974, but was set forth in the Court's Order of October 1, 1974. Several of these depositions dealt with proposed plans for relief and were entered into evidence in the hearing of May 10, 1974.

The defendants also argue that the costs of copies of six of these depositions used by plaintiffs at trial should not be allowed. The Court finds these deposition expenses limited and the use of them by Court and counsel extensive. Further, if several of these depositions had not been introduced into evidence, the trial would have necessarily been longer and more expensive. The Court therefore finds that these deposition expenses were reasonable and that they should be taxed as costs.

The defendants also object to the request of plaintiffs to recover the expense incurred in obtaining several portions of the transcript of the trial and of the post-trial hearings. The Court notes that the plaintiffs obtained only a few brief portions of the transcript, including the testimony of the defendant Commissioner at the May 10, 1974, hearing where she articulated her general plan for the implementation of the rights established by the Court in its February 15, 1974, Order. The Court finds this request minimal and the justification for this expense considerable.

Finally, the defendants also assert that the request for photographic expenses should be denied. The Court notes that these photographs were entered into evidence at trial and are essential parts of the record. If the case had been appealed, they would have been an indispensable part of the record for the appellate courts to review. The Court finds the photographic expenses necessary and appropriately taxed as costs.

It is ordered:

That the plaintiffs' motion for taxation of costs is granted in full.

Judgment will be entered for plaintiffs and against defendants in the sum of $5,521.20.