Gloristeen **HARRIS** et al.,
Plaintiffs-Appellees,

v.

**CITY OF FORT MYERS** et al.,
Defendants-Appellants.

No. 78–1958.

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1980.

---

Julian D. Clarkson, Tampa, Fla., Frank B. Watson, Jr., Fort Myers, Fla., for defendants-appellants.

David M. Lipman, Miami, Fla., Rosalind D. Gray, Washington, D. C., George E. Carr, Florida Rural Legal Services, Immokalee, Fla., William L. Robinson, Washington, D. C., for Gloristeen Harris.

Before TUTTLE, VANCE and POLITZ, Circuit Judges.

TUTTLE, Circuit Judge:

The City of Fort Myers appeals from a judgment allowing attorney's fees to the plaintiffs in a civil rights class action suit which terminated in a consent judgment. Appellants concede for the purpose of this appeal that: (1) The Civil Rights Attorney's Fees Awards Act of 1976 applies to this case; (2) The circumstance that adjudication was by consent judgment does not per

se preclude a finding that plaintiffs were the "prevailing party;" and (3) The action was properly certified as a class action. The consent judgment expressly excluded any determination of attorneys' fees. It stated:

> Plaintiffs and Defendants having not been able to reach agreement on attorney fees, costs and expenses, therefore these matters are not included in the final Judgment, but will be determined by the Court on proper motion.

Later after motion and objections were filed, the court entered an order which stated:

> Defendants contest plaintiffs' contention that it was the "prevailing party." The record supports a finding that plaintiffs did prevail.

> Filed February 27, 1976, the case was strenuously defended until after a pretrial conference and on the eve of trial. While the parties are commended for settling the principal issues, it is obvious that plaintiffs' pretrial presentation was a persuasive factor in the settlement and that in the absence of settlement the plaintiffs would have prevailed.

> Upon consideration, I find that plaintiffs were the "prevailing party" in this case within the contemplation of Public Law No. 94–559, *supra*, and that in the exercise of legal discretion their counsel should be allowed a reasonable attorneys fee.

.  .  .  .  .

The Court is familiar with and has considered the appropriate standards, *see Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), and has considered plaintiffs' detailed supporting documentation, and is of the opinion that $31,870 as reasonable attorneys fee and

$7,712.80 as costs should be set and allowed Lawyers Committee for Civil Rights Under Law for the services of its attorneys and its costs reasonably expended, and that $3,980 as attorneys fee and $335 as costs should be set and allowed Florida Rural Legal Services, Inc. for the services of its attorney and its costs reasonably expended.

Upon appeal from this judgment, the case was remanded to the trial court, on the motion of the appellees, in order to permit the trial court to make findings of fact according to the standards of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[1] there remain the arguments contained in the brief filed in this Court before remand and a new one filed by supplemental brief in the renewed appeal. Finally, the appellants stressed on oral argument in effect what amounts to a different attack on the fee award. That ground is that the award was improper because the consent decree compelled the defendants to do only such things as they were already undertaking to do. Our problem has become somewhat more difficult, because the appellees filed no brief other than that filed on the first appeal, and on oral argument did not undertake to specify any part of the consent decree which imposed any burden on the defendants which they had not already undertaken to perform.

■ The appellants' first and second points urged in their brief filed on the first appeal, can be easily disposed of. The City contends that since the action was brought under the rationale underlying this Court's decision in *Hawkins v. Town of Shaw*, 461 F.2d 1171 (5th Cir. 1972), and since the Supreme Court in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597

---

1. One ground of appeal urged by appellants in their brief stated the question:

> Whether an award of counsel fees predicated solely upon "the mechanical hours times dollars approach" without any explication of the application of the "Johnson guidelines" may stand on appeal.

Responding to this ground of appeal, the appellees made a motion to this Court that it

make a limited remand of the case to the district court, whereupon this Court entered the following order:

> It is ordered that appellees' motion for a limited remand with specific instructions to the trial court for Rule 52 F.R.C.P. findings and a Rule 58 F.R.C.P. judgment is granted.

(1976), has overruled so much of *Town of Shaw* as held that no proof of discriminatory racial purpose was required in a Section 1983 action for deprivation of equal rights by a municipality, the plaintiffs could not be the "prevailing party" absent some competent factual determination that defendants were guilty of discrimination justifying relief. The short answer to this, of course, is that, regardless of the legal standard now applicable in such an action under Section 1983, the court had before it a consent decree. Thus, the City had waived any defense it may have had under *Washington v. Davis, supra*. It simply concluded that it would enter into the consent decree without urging any defenses to the complaint.

Upon the remand, the trial court entered a new order reciting the mandate from this Court. The court stated:

The court intended its March 27, 1978 order to be an opinion or memorandum decision containing findings as authorized by Rule 52, Federal Rules of Civil Procedure.

But, the court then proceeded to take up the 12 specific guidelines of *Johnson, supra*, at 717, *et seq*. The order discussed each of the several guidelines, and made a final finding of an award of precisely the same amount it had previously determined was due to be paid to counsel.

These findings were then reduced to a judgment, which was again appealed to this Court.

■ Appellant filed a supplemental brief in which it pointed to the fact that under the *Johnson* factor THE AMOUNT INVOLVED AND THE RESULTS OBTAINED the trial court referred to an administrative ruling issued by the Office of Revenue Sharing to the effect that the City of Fort Myers was in noncompliance with ORS in "finding discrimination in employment on the basis of race and sex in violation of our rules and regulations," whereas, no such issue of racial or sexual discrimination in employment practices was at issue in the case.

The entire findings of the court for this factor must be considered:

Plaintiffs achieved relief on both of their claims litigated throughout this suit. As to those claims seeking equal benefits in federally funded programs under the State and Local Fiscal Assistance Act ("Revenue Sharing Act") pursuant to 31 U.S.C. § 1242 *et seq*., plaintiffs obtained on office of Revenue Sharing (ORS) administrative ruling on March 10, 1976 that the City of Fort Myers was in noncompliance with ORS in "[F]inding discrimination in employment on the basis of race and sex in violation of our rules and regulations. ORS then required defendants to adopt an affirmative action plan "designed not only to increase the overall employment of minorities and females but also to eliminate the practice of concentrating minority employees in departments traditionally utilizing large numbers of manual laborers.

*Most significantly*, as to plaintiffs' claims of municipal service discrimination, this Court's final judgment and order entered on April 11, 1977 mandated: 1) the paving of 39,500 lineal feet on 30 streets; 2) installation of 13,966 feet of sewer lines; 3) installation of 4,550 feet of water lines; 4) additional storm drainage, street resurfacing, and curb, gutter, and sidewalk improvements; and 5) the reconstruction of the Ford Street drainage canal, all of which is concentrated in the black residential neighborhood of the City of Fort Myers costing $1,900,000.

Finally, as this Court has previously recognized in its March 27, 1978 order, the results obtained in this lawsuit are the direct product of plaintiffs' efforts:

Filed February 27, 1976, the case was strenuously defended until after a pretrial conference and on the eve of trial. While the parties are commended for settling the principle issues, it is obvious that plaintiffs' pretrial presentation was a persuasive factor in the settlement and that in the absence of settlement the plaintiffs would have prevailed.

It is true that in response to a complaint filed by another person challenging the ra-

cial and sexual makeup of the employment of Fort Myers and in response to a complaint filed by the plaintiffs dealing with the alleged racially discriminatory furnishing of city services, the ORS, under the signature of the Director, Office of Revenue Sharing, did make a finding that the city was in violation of the rules and regulations dealing with discrimination in employment.

It is also true that the litigation before this Court dealt only with discriminatory furnishing of city services. However, when plaintiffs' counsel upon the suggestion of the Court while passing on a motion to dismiss, filed a complaint with the Secretary of the Treasury as administrator of the ORS program, it referred to an earlier letter written on behalf of the plaintiffs complaining of alleged discriminatory employment practices. The response of the ORS Director cited violation of Section 122 of the Act (31 U.S.C. § 1242) in that she found discrimination in employment practices of the city, which as recipient of ORS funds was barred by the regulations forbidding discrimination in city employment. The Director found no racial discrimination with respect to the furnishing of city services.

While it is not clear what connection there is between this finding of discrimination and the value of the services of the lawyer who obtained a consent judgment requiring the continuation of some expenditures and the undertaking of others, the court may have either overlooked the true thrust of the litigation or it may have considered this determination of the ORS Director relevant to the proving of the plaintiffs' case of discrimination in the furnishing of city services.

In view of the fact that the trial court's appreciation of the services performed by the attorneys in preparation for the trial of this case depended in large part upon the discovery procedures, all of which dealt with the furnishing of city services, and in view of the fact that the trial court's original order granting attorney's fees granted precisely the same amount without any reference to the ORS finding of discrimination

in employment, we think it apparent that the trial court's reference to this extraneous fact should not cause us to reverse its judgment for attorney's fees. We are further brought to this conclusion by three other factors:

(1) In its order the trial court spoke of the consent judgment, following its reference to the ORS letter in terms indicating that this was the controlling factor in awarding fees, the order stated:

> Most significantly . . . this court's final judgment and order . . mandated . . . all of which is concentrated in the black residential neighborhood of Fort Myers costing $1,900,000.

(2) Under the heading THE SKILLS REQUISITE TO PERFORM THE LEGAL SERVICES PROPERLY the court said:

> Mr. Lipman and Miss Gray demonstrated a high degree of skill and tact in preparing and presenting this case. The preparation was such that defendants entered into a consent judgment. I find that this was a result of "resigned submission rather than willing concession." Both attorneys are experts in presenting cases of this type. Their work product is as good as any I have ever encountered. The work of Miss Turner and Mr. Carr was necessary and was performed capably.

(3) Under the heading WHETHER THE FEE IS FIXED OR CONTINGENT the court made the following comments:

> The factor of contingency is ordinarily regarded as the most important single ingredient in *augmenting* an hourly rate. *Johnson, supra* at 718–19. *See also, Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1975) and *Lindy Bros. [v. American Radiator & Standard Sanitary Corp.]*, 540 F.2d 102 (3rd Cir. 1976). Ordinary hourly rates are set for cases in which attorneys are paid win, lose or draw. In this case, there could be no fees payment unless plaintiff prevailed. [Emphasis in original.]
>
> Moreover, this case was not simply contingent in the usual sense, *i. e.*, dependent on winning the merits. At the time

plaintiffs' counsel undertook this assignment, the complaint being filed on February 26, 1976, there was no statute providing for attorneys' fees even if they prevail; the law at that time entitled them to fees only if the defendants litigated in bad faith. *See e. g., F. D. Rich Co., Inc. v. Industrial Lumber Co., Inc.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) and *Gates v. Collier,* 489 F.2d 298 (5th Cir. 1974). This case was thus doubly contingent, *and the Court—had plaintiffs asked, which they did not—would have been more than justified in granting a "multiplier" or "incentive" award above the fixed hours claimed in light of the contingency nature of the case.* [Emphasis added.]

█ Finally, we come to the oral argument on behalf of appellants, which was almost entirely consumed with the proposition that, although certain obligations of the City were now made the subject of a district court's order, there was nothing contained in the order that required the City to do or perform any acts that it was not already engaged in and which it did not already have the purpose to continue to completion. The appellants' briefs do not expressly and categorically state this as a ground for reversing the trial court's award of attorneys' fees. While the briefs discussed the fact that the City was already engaged in upgrading the black neighborhoods of the City under block grants received from the United States Government, each such discussion incorporated some further legal argument. Apparently for that reason, the appellees did not file a brief upon the new appeal nor did counsel expressly point out in oral argument any specific improvement required under the consent decree that had not, in fact, been clearly identified as part of the ongoing projects to which the City had committed itself. This has required a careful reading of the record, unless we were prepared to affirm the trial court's judgment simply on the proposition that the plaintiffs did prevail because they have a court judgment requiring future conduct by the City which, previous to that time, the City had been fully at liberty to terminate if it saw fit.

Because we find an important project included in the consent order that does not appear to have been specifically engaged in by the City as part of the fully discussed federally funded program, we pretermit a decision on whether the obtaining of the consent judgment in these circumstances would be of itself sufficient to warrant the court's finding that the plaintiffs were the prevailing party.

The consent decree deals with two separate projects, listed under Sections (A) and (B). The order in part provided as follows:

1. This decree extends to all issues set forth in the Complaint as filed in this matter and to the class of Plaintiffs defined as follows:

(a) All black residents of Fort Myers, Florida, who are similarly situated and affected in the providing of municipal services and in the spending of Federal Revenue Sharing Funds.

2. This Court has jurisdiction over the subject matter of this action and the parties thereto.

3. The Defendants shall continue the improvements and/or additions to the municipal services provided in the black residential areas of the City of Fort Myers and shall accomplish the same adhering to the finance and construction schedules and limitations thereon as set forth below.

(a) *Dunbar-Area Improvements—Defendants shall continue that certain Community Development Block Grant Program set forth in Appendix "A"* hereto subject to the limitation of approval of plans and specifications and availability of funds under the Community Development Block Grant Program.

(b) *Ford Street Drainage Improvement—Defendants shall design, construct, maintain and install additions* to the existing Ford Street storm drainage system as set forth in Appendix "B" hereto subject to the following limitations:

(1) Correlation of drainage program presently activated by the County of Lee

under a "Neighborhood Development Program" using Federal Funds in the area West of the Ford Street drainage canal and South of Anderson Avenue.

(2) Sharing of such expenses as are necessary to effect proper drainage by means of the improvement for the areas lying West of Ford Street and situate in the City of Fort Myers and the area lying East of Ford Street and situate within the County of Lee.

(3) This project is contingent upon the continuation of the State and Local Fiscal Assistance Act of 1972 ("Revenue Sharing Act").

(4) The City will complete the Ford Street Drainage Improvements within three years.

4. The Defendants are required to make a good faith effort to construct the improvements and additions in the manner and engineering designs specified in Appendix "A" and "B" attached hereto unless good and acceptable engineering practices should dictate otherwise. In the event the Defendants decide that said improvements and additions shall be constructed in a manner or in an engineering design substantially different from that set out in said Appendix and in a manner which will depreciate the quality and quantity of storm drainage, then such substantial change shall first be submitted to counsel for the Plaintiffs for the acceptance or rejection. In the event counsel for Plaintiffs rejects such substantial changes, then the matter shall be submitted to this Court.

5. That on or about April 1, 1978, and on the same date of each year thereafter until completion, Defendant shall file with the Clerk of this Court and serve upon lead counsel for the Plaintiffs a report which sets forth all steps taken to implement and the status of each facet of the programs required by Appendix "A" and "B" of this Final Judgment. [Emphasis added.]

The improvements included under Appendix "A" were specifically listed by street name. Entries on the schedule were keyed to a certain engineer's report made in connection with the block grants. Although we have not attempted to check each item, we will assume for the purpose of this appeal that these specific improvements were those that were contemplated in the Community Development Block Grant Program referred to in the Consent Decree, and which had been undertaken initially by the City before the present suit was filed.

The improvements contemplated under Appendix "B" were stated in the following terms:

### FORD STREET DRAINAGE IMPROVEMENTS [1]

*Improvements required:*

1. Reconstruct Ford Street Canal in the Ford Street right of way between Edison and Canal. Canal should be deepened and the channel should be enlarged as much as possible taking into account the limited right of way and the fact that the East bank of existing ditch is in the County. All inadequate and misaligned culverts should be replaced.

We are unable to find any reference to the Ford Street drainage improvements, which are to be completed at an estimated cost of $300,000, anywhere in the documents relating to the Community Development Block Grant Program. We are unable to find any entry in the record before this Court that indicates what, if anything, had been done by the City that was in any sense a commitment to carry out what is now required of it under Appendix "B" to the Consent Order. In fact, the wording of the Consent Order seems clearly to indicate that the work to be done on the Ford Street drainage project is not a continuance of work already undertaken. The introductory language set forth above states that

---

1. Storm drainage in the Ford Street watershed is to be improved south of Edison Avenue to alleviate flooding in the vicinity of Southward Village and to the south. Engineers estimate for these improvements is $300,000 assuming they are completed during the next twenty-Four months.

"work already started, as set forth in Appendix 'A' attached hereto, will be continued, etc." whereas the Schedule "B" requirements are worded in the following manner: "and improvements to water drainage system as set forth in Appendix 'B' subject to the limitations thereon. . ." Moreover, the language of Section 3(a) Dunbar-Area Improvements is that: "Defendants *shall continue* that certain Community Development Block Program set forth in Appendix 'A'," (emphasis added.) whereas the language in Section 3(b) Ford Street Drainage Improvement, says: "Defendants *shall design, construct, maintain and install* additions to the existing Ford Street storm drainage system as set forth in Appendix 'B' etc." [2]  [Emphasis added.]

It is apparent that on the record before the trial court, there was nothing to prevent its finding that the plaintiffs had prevailed at least to the extent of obtaining a judgment compelling the City to perform the services required under Appendix "B" of the Consent Order.

■ The judgment of the trial court is AFFIRMED. Upon remand, the trial court will fix an appropriate attorney's fee for this appeal.

AFFIRMED and REMANDED.

---

2. While baldly stating on several occasions that the consent decree required the City to do nothing other than what was already under way, the only proof of this is the evidence relating to the Community Development Block Grant Program. These improvements are all encompassed under Appendix "A" above. The only reference in the City's brief to the Ford Street Drainage Improvement item as an ongoing program is the statement, a footnote in the brief: "The Ford Street project was included within an engineering report prepared by Archie T. Grant, Inc. and transmitted to the mayor on February 1, 1976." That is all we are told about any prior obligation the City may have assumed to expend $300,000 on the project as required by the consent decree. We are not told whether the City ever acted on the report, which was made less than a month before the suit was filed. Incidentally, Grant opined the work would cost $120,000.