**Nazareth GATES et al., Plaintiffs,**
**United States of America, Plaintiff-Intervenor,**

**v.**

**John A. COLLIER et al., Defendants.**

**No. GC 71-6-K.**

United States District Court,
N. D. Mississippi,
Greenville Division.

Feb. 14, 1973.

Roy S. Haber, Boulder, Colo., Michael Davidson, Dept. of Justice, Washington, D. C., Frank R. Parker, Jackson, Miss., for plaintiffs.

P. Roger Googe, Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

On February 8, 1971, this class action was filed by certain inmates incarcerated at Mississippi State Penitentiary at Parchman, Mississippi (Parchman) against the Superintendent of the Penitentiary, the members of the State Penitentiary Board and the Governor of the State. The complaint asserted that certain aspects of the operation and administration of Parchman, for which defendants were responsible, were in violation of plaintiffs' First, Eighth, Thirteenth and Fourteenth Amendment rights, for which plaintiffs were provided a federal remedy by the provisions of 42 U.S.C. §§ 1981, 1983, 1985 and 1994. The complaint also alleged that black inmates at the prison had been segregated and discriminated against by prison officials solely on account of race in violation of the equal protection clause of the Fourteenth Amendment. The defendants entered a denial to all charges. Subsequently, the United States was allowed to intervene as plaintiff under 42 U.S.C. § 2000h–2.

After extensive pre-trial discovery, the submission of numerous pre-trial motions and other pleadings, hearings, and pre-trial conferences, the case was finally set for full evidentiary hearing on May 15, 1972. At the eve of trial, however, counsel agreed to forego the introduction of oral testimony and other evidence in open court, and submit the case for decision upon the pleadings, stipulations, evidence gathered through discovery techniques, offers of proof (including summaries of testimony, photographs, reports and other documentary evidence), factual summaries, and other materials, the admissibility of which was not objected to by any party.

On September 13, 1972, this court issued its Findings of Fact and Conclusions of Law, 349 F.Supp. 881, 885 (N. D.Miss.1972), declaring, inter alia, that black inmates at Parchman were being subjected to patently impermissible racial discrimination in their assignment to living quarters and work details, punishment, and opportunity to participate in vocational training programs in violation of the equal protection clause; that inmate housing, health care, food services, and water and sewage facilities were so shockingly inadequate as to threaten the physical health and safety of the inmate population in violation of the Eighth Amendment as well as relevant Mississippi statutes; that inmates were being subjected to physical assaults, abuses and indignities perpetrated by other inmates and perpetuated by

Parchman's trusty system in violation of the Eighth Amendment; that certain forms of punishment routinely administered at Parchman were brutal and dehumanizing and so severe as to offend contemporary concepts of human decency and dignity in violation of the Eighth Amendment; that punishment procedures at Parchman failed to comport with minimal requirements of due process in violation of the Fourteenth Amendment; and finally, that prison officials arbitrarily censored and suppressed inmate mail in violation of the First and Sixth Amendments.

Accordingly, this court on October 20, 1972, issued its Judgment (349 F.Supp. 881, 898 (N.D.Miss.1972)), enjoining defendants, and all persons in privity with them, from performing or permitting to continue those unconstitutional practices and conditions found to exist at Parchman and establishing time tables for their elimination. Paragraph 20 of the Judgment expressly reserved the issue of allowance of reasonable attorney's fees and expenses to counsel for plaintiff inmates. On July 25, 1972, a motion for an award of attorney's fees and expenses was filed by plaintiffs' counsel, supported by a memorandum brief. Defendants contested the motion and filed brief in opposition. The motion for counsel fees is now before the court for determination upon its merit.

Contemporaneous with his motion for fees and expenses, plaintiffs' counsel filed affidavits of two experienced, practicing attorneys to the effect that $35 per hour is a reasonable charge for a competent attorney engaged in complex litigation in the federal district courts of this jurisdiction. By affidavit, plaintiffs' counsel asserts that from inception of the case until July 24, 1972, the date of filing the affidavit, he devoted a total of 2,814½ hours to the case. Claim was made for $98,507.50 as attorney's fee (2,814½ × $35), and $13,624.46 expenses. While challenging liability for any part of the claim and also contesting its reasonableness, defendants agree that the case may be decided upon affidavits.

Defendants strongly urge that the case sub judice is not an appropriate one for an award of reasonable attorney's fees and expenses. In support of their contention, defendants maintain that an award under this court's equity powers would be justified only upon a finding that defendants' actions were "unreasonable and obdurately obstinate" or that the defense was conducted fraudulently, vexatiously, in bad faith, or the like, and that the circumstances of this litigation do not justify such a finding.

■ The firmly established rule of American jurisprudence is that, in the absence of statute or limited other exception, each party to a litigation must bear the burden of paying his own attorney's fees. A long-recognized exception to this rule, however, is that a federal district court may, in exceptional cases, award attorney's fees as taxable cost against a party who has brought an action or maintained a defense "in bad faith, vexatiously, wantonly, or for oppressive reasons."[1]

In Lee v. Southern Home Sites Corp., 429 F.2d 290, 295 (5 Cir. 1970), a civil rights suit maintained pursuant to the Thirteenth Amendment and 42 U.S.C. §§ 1981, 1982, the Court concluded:

"There is ample authority, outside the civil rights area, to support the proposition that the allowance of attorneys' fees and expenses of preparation for trial is in the discretion of the district court *sitting in equity* where exceptional circumstances call for their allowance in order to do justice between the parties, . . . as well as in the more traditional situations where the allowance of attorneys' fees is provided for by statute or contract. In the area of civil rights, many cases have either allowed or implicitly recognized the discretionary power of a district judge to award attorneys' fees in a proper case in the absence of express statutory provision

1. See, 6 Moore's Federal Practice ¶ 54.77[2], p. 1709, and cases cited therein.

. . . and especially so when one considers that much of the elimination of unlawful racial discrimination necessarily devolves upon private litigants and their attorneys, . . . and the general problems of representation in civil rights cases." (citations omitted).

▊ In civil rights litigation, recent decisions of the Fifth Circuit have clearly endorsed the proposition that a federal district court, in the exercise of equity powers, may properly award attorneys' fees where the actions of the defendants can be classified as "unreasonable and obdurately obstinate." Jinks v. Mays, 464 F.2d 1223 (5 Cir. 1972); Horton v. Lawrence County Board of Education, 449 F.2d 793 (5 Cir. 1971); Lee v. Southern Home Sites Corp., supra; Williams v. Kimbrough, 415 F.2d 874 (5 Cir. 1969). Such award is within the discretion of the district court, to remain undisturbed upon appeal in the absence of clear abuse. Jinks v. Mays, supra.

▊ In the instant case, we have no difficulty in finding that defendants' actions were unreasonable and obdurately obstinate. From commencement of the suit on February 8, 1971, defendants staunchly denied the existence of unconstitutional practices and conditions at Parchman. Defendants continued to adhere to this position at several lengthy evidentiary hearings of an interlocutory nature. The position thus consistently maintained by defendants compelled plaintiffs' attorney to expend time and expenses which otherwise would not have been incurred. Consequently, in preparation of plaintiffs' case, plaintiffs' attorney engaged in extensive pre-trial discovery, made numerous trips to Parchman, interviewed hundreds of inmates, and submitted a plethora of motions and accompanying legal memoranda. We are convinced that only because of the overwhelming magnitude of evidence gathered by plaintiffs' attorney in cooperation with the Department of Justice in support of the allegations contained in the complaint did defendants in effect recognize the futility of a full evidentiary hearing and submit the case on a virtually agreed record.

Defendants themselves concede that this is not a case involving unsettled questions of constitutional law. In their memorandum, defendants acknowledge that federal constitutional standards concerning inmate rights and prison administration are well established and are applicable to the present case. Defendants there stated:

> "Needless to say, there are numerous cases on inmates' rights and involving prison operations. The questions that were presented are not novel. Certainly the questions of desegregation, mail censorship, due process rights, eighth amendment rights, and even questions involving the trusty system and its operation are not ones of first impression." at p. 2.

As set forth in this court's Findings of Fact, the unconstitutional conditions and practices at Parchman have long existed as a result of public and official apathy, despite the notoriety of matters affecting prison administration stemming from prior reports to the State Legislature and widespread publicity of the news media. The court in its previous findings simply declared facts that were well documented and known to all interested in the subject. Constitutional rights of inmates may not be thwarted or ignored because of frequent changes in prison personnel and officials. We now hold that the state of the law in the area of prisoner rights was sufficiently settled so that it should have been unnecessary for this action to be brought; this suit was necessary only because of defendants' unreasonable refusal to comply with accepted constitutional principles. We are further convinced that the unnecessary delay, extraordinary efforts and burdensome expenses incurred incident to the resolution of this case were occasioned because of defendants' maintenance of their defense in an obdurately obstinate manner. Thus, plaintiffs'

attorney is entitled to reasonable fees and expenses.

Since, in our view, this is an appropriate case of exceptional circumstance for awarding attorney's fees and expenses because of defendants' unreasonable and obdurately obstinacy, we need not rule upon plaintiffs' alternative contention that their counsel is entitled to an award based on the theory that he was acting as a "private-attorney general", and vindication of their rights was in the public interest.[2]

We now consider defendants' specific objections to particular expenses and the number of hours claimed by plaintiffs' attorney, and pass upon the reasonableness of the claim. Defendants challenge various items of work enumerated by plaintiffs' counsel for which compensation is sought. We find that certain of these objections are meritorious and will be upheld. For example, plaintiffs' counsel claims 80 hours in Item 18 for a hearing at Oxford on motion for temporary restraining order where the plaintiffs did not prevail or obtain the special relief then sought; accordingly that item must be denied. Again, Item 29 claims compensation for 614 hours spent in corresponding with prison inmates. We strike this item as a proper element of necessary legal service. The court's allowance of 400 hours for personal interviews by counsel with inmates at the prison on approximately 40 visits, found to be reasonable and proper, is an adequate recognition of time expended in necessary contacts between counsel and the inmates. We also rule out 38 hours claimed in Item 31 for making free world employee files, 90 hours in Item 35 for making incident files for inmates, and 60 hours in Item 36 for cataloging incidents. Such work clearly appears to be nonprofessional, of a clerical nature, and capable of being performed by secretaries or clerks for whom an expense allowance will be made. The court also

finds excessive the estimate of time in Item 47, entitled preparation of findings of fact and conclusions of law; this item of 180 hours should be reduced by 100 hours. The noted deductions from allowable time total 982 hours, and when these eliminations are made, plaintiffs' counsel establishes an investment of 1832½ hours in the case. By this finding, the court honors the request of plaintiffs' counsel for compensation for the hours engaged in personal interviews with inmates, doing legal research, preparation of pleadings, appearances before the court on various motions, submission of preliminary memorandum briefs, filing and answering interrogatories, preparation for an attendance at depositions of numerous witnesses for 25 days, submitting motion for summary judgment, preparing stipulations, pre-trial orders, proposed findings of fact and memorandum briefs on merits, and attending pre-trial conferences. All of these elements constituted work of a readily identifiable professional nature necessarily and reasonably incurred on behalf of plaintiffs in getting the issues resolved.

The court finds that the prevailing rate for legal services performed in this federal district court in comparable litigation is $35 an hour, such charge is fair and reasonable, and should be here applied to determine the worth of the legal service performed by plaintiffs' counsel. Considering the nature of the case and the successful results achieved on behalf of the inmates and the amount of time invested by counsel, the court concludes that a reasonable fee for legal services rendered on behalf of plaintiffs would be $65,000. Affidavits on file, however, establish that Roy Haber, counsel for the inmates, was throughout the pendency of this litigation employed as a staff attorney by Lawyers Committee for Civil Rights Under Law, with offices at Jackson, Mississippi, and that

---

2. See Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.1972); Wyatt v. Stickney, 344 F.Supp. 387 (M.D.Ala.1972); Newman v. State of Alabama, 349 F.Supp. 278 (M.D. Ala.1972).

he received an annual salary of $15,500. While working on this case, Mr. Haber has already been paid $23,250 for services. There is no evidence that the inmates at the Penitentiary paid any amount whatsoever for legal services or expenses, and it may be safely assumed that such did not occur. It is equitable to deduct the sums paid to plaintiffs' counsel by his employer while working on the Parchman case. A fee of $41,750 is, therefore, allowed for legal services rendered.

Plaintiffs' counsel claims reimbursement for expenses of $13,624.42. This is based upon an itemized list of three pages of total outlays of $12,541.70 plus Xerox expense of $1,082.72 calculated at 7¢ a copy for 15,446 pages of material. The court has carefully reviewed each item of expense and disallows the following as improper:

| 1971 | | |
|---|---|---|
| 5–21 | Purchase of book | 7.95 |
| 8–30 | Magazine | 3.00 |
| 9–21 | District of Columbia travel for Haber | 33.27 |
| 10–29 | Magazine | 2.00 |
| 11–12 | Magazines | 11.50 |
| 11–8 | Haber expenses and travel to Chicago | 208.29 |
| 11–9 | Magazine | 25.00 |
| 11–9 to 24 | Haber travel and expenses Chicago | 237.58 |
| 1972 | | |
| 2–23 | Magazine | 5.00 |
| 2–25 | Sutton Supply, filing cabinet | 70.88 |
| 3–22 | Subscription | 10.00 |
| 4–7 | W. T. May, typewriter rental | 28.88 |
| 4–11 | Office Supply, typewriter repair | 23.89 |
| 4–20 | W. T. May, typewriter rental | 51.46 |
| 6–26 | W. T. May | 54.59 |
| 6–30 | Greenville Water Dept. | 7.75 |
| | | $781.04 |

In addition, reimbursement is sought for $1,857.33 labeled as "Haber expenses" without elaboration or explanation of any kind. The court rejects this portion of the claim for lack of proof. Eliminating the foregoing items which total $2,638.37, the court finds the reimbursable expenses in this case to be $10,986.-05.

An order shall be entered directing defendants to pay plaintiffs' counsel $41,750 for services and $10,986.05 for costs and expenses incident to the action. The award herein shall not consti-tute the personal, or individual, liability of the named defendants, or any of them, but they are directed to pay same from funds which the Mississippi Legislature, at its 1973 Session, may appropriate for the operation of the Mississippi State Penitentiary.