Nazareth GATES et al.,
Plaintiffs-Appellees,

and

United States of America,
Plaintiff-Intervenor-Appellee,

v.

John COLLIER, Superintendent,
Mississippi State Penitentiary,
et al., Defendants-Appellants.

No. 73–1790.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1975.

A. F. Summer, Atty. Gen. of Miss., William A. Allain, Asst. Atty. Gen., P. Roger Googe, Jr., Sp. Asst. Atty. Gen., Jackson, Miss., for defendants-appellants.

Roy S. Haber, Native American Rights Fund, Boulder, Colo., Edward J. Reilly, New York City, for plaintiffs-appellees.

Michael Davidson, Jesse H. Queen, Thomas R. Sheran, U. S. Dept. of Justice, Civil Rights Div., Washington, D. C., H. M. Ray, U. S. Atty., Oxford, Miss., for plaintiff-intervenor-appellee.

Before BROWN, Chief Judge, and TUTTLE, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

PER CURIAM:

The judgment of the district court as it relates to the award of attorneys' fees,[1] *Gates v. Collier,* N. D. Miss., 1973, 371 F.Supp. 1368, is vacated and the cause is remanded for reconsideration consistent with the supervening decisions of *Alyeska Pipeline Service Co. v. The Wilderness Society,* 1975, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, and *Edelman v. Jordan,* 1974, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662.

Vacated and remanded with direction.

TUTTLE, Circuit Judge, with whom BROWN, Chief Judge, and WISDOM, GEWIN, THORNBERRY and GOLDBERG, Circuit Judges, join, dissenting:

---

1. The remaining issues were resolved in *Gates v. Collier,* 5 Cir., 1974, 501 F.2d 1291.

With deference, I dissent. On May 27th the Supreme Court vacated the judgment entered by the Court of Appeals for the Sixth Circuit in the case of *Taylor v. Perini,* 503 F.2d 899, a case in which the appellate court had held that the Eleventh Amendment as applied by the Supreme Court in *Edelman v. Jordan,* 1974, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, bars an award of attorneys' fees against the State Prison Warden in his personal capacity, or against the State of Ohio, or both. The Supreme Court order reads as follows:

"The petition for a writ of certiorari is granted. The judgment is vacated and the case is remanded to the U. S. Court of Appeals for the Sixth Circuit for further consideration in light of *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, 421 U.S. 982, 95 S.Ct. 1985, 44 L.Ed.2d 474 (1975)."

This case, then, is now in precisely the same posture which the Supreme Court placed *Perini.* It is now before the Court of Appeals for the Fifth Circuit and, it would seem to me, it is incumbent upon this Court, sitting en banc, to consider it "in light of *Alyeska Pipeline Service Co. v. Wilderness Society.*" I can see no justification in adding another year's delay to the entry of a judgment of this Court determining whether counsel whose services were so highly praised by the trial court for a successful termination of a prisoners' suit to end what were admitted by the Governor of the State to amount to unconstitutional deprivations of their rights may now be paid the attorneys' fees allowed by the trial court.

The deplorable state of prison conditions in the institution for which the defendants were the responsible officials are fully outlined in an opinion of this Court in *Gates v. Collier et al.,* 501 F.2d 1291 (1974 5th Cir.). It is unnecessary to repeat the findings of the district court which were there approved by us. The court's judgment was entered in October 1972, by which he enjoined many practices and required further supervision with respect to additional matters which required some time to correct. Subsequently, in February 1973, the petition of counsel for the plaintiffs for attorneys fees and out-of-pocket expenses was heard by the trial court. Having in mind the work performed by counsel, the trial court made findings of fact which include the following:

"In the instant case, we have no difficulty in finding that defendants' actions were unreasonable and obdurately obstinate. From commencement of the suit on February 8, 1971, defendants staunchly denied the existence of unconstitutional practices and conditions at Parchman. Defendants continued to adhere to this position at several lengthy evidentiary hearings of an interlocutory nature. The position thus consistently maintained by defendants compelled plaintiffs' attorney to expend time and expenses which otherwise would not have been incurred. Consequently, in preparation of plaintiffs' case, plaintiffs' attorney engaged in extensive pretrial discovery, made numerous trips to Parchman, interviewed hundreds of inmates, and submitted a plethora of motions and accompanying legal memoranda. We are convinced that only because of the overwhelming magnitude of evidence gathered by plaintiffs' attorney in cooperation with the Department of Justice in support of the allegations contained in the complaint did defendants in effect recognize the futility of a full evidentiary hearing and submit the case on a virtually agreed record. Defendants themselves concede that this is not a case involving unsettled questions of constitutional law. In their memorandum, defendants acknowledge that federal constitutional standards concerning inmate rights and prison administration are well established and are applicable to the present case. Defendants there stated:

'Needless to say, there are numerous cases on inmates' rights and involving prison operations. The questions

that were presented are not novel. Certainly the questions of desegregation, mail censorship, due process rights, eighth amendment rights, and even questions involving the trusty system and its operation are not ones of first impression.'"

In the *Alyeska* case, as everyone now knows, the Supreme Court ruled out the right of a court to award attorneys' fees when not authorized by specific statute on the general theory that the plaintiff's counsel was acting as a "private attorney general", but, as is sometimes overlooked, the Court carved out an exception to the rule that generally each party must bear his own counsel fees. The Court said:

"Also a court may assess attorneys' fees . . . when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . .' . . . these exceptions are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, *unless forbidden by Congress* . . . ." (Emphasis supplied).

In its findings in this case the Court distinguished between its right to award a fee as to the plaintiffs' counsel as a "private attorney general" and on the grounds which it set out so fully above. The Court said:

"Since, in our view, this is an appropriate case of exceptional circumstance for awarding attorneys' fees and expenses because of defendants' unreasonable and obdurate obstinacy, we need not rule upon plaintiffs' alternative contention that their counsel is entitled to an award based on the theory that he was acting as a 'private-attorney general', and vindication of their rights was in the public interest. . . ."

I would think that no one would disagree with the proposition that recitation of the defendants' obstinate and unreasonable conduct in forcing the commencement of the suit in the first place, and in the manner in which they forced the plaintiffs to "spend time and expenses which otherwise would not have been incurred. . . .", as a result of which, "plaintiff's attorney engaged in extensive pretrial discovery, made numerous trips to Parchman, interviewed hundreds of inmates, and submitted a plethora of motions and accompanying legal memoranda", met the standard of *Alyeska* of bad faith, vexatious, wanton, or oppressive conduct. The trial court's recitation both semantically and literally fits the exception saved to the district courts in *Alyeska.*

I agree with all that is said in the dissenting opinion filed by Judge Gewin in the companion case of *Newman v. Alabama*, 5 Cir., 522 F.2d 71, No. 73–2033, decided October 29, 1975. In this case, the trial court's opinion states as follows:

"An order shall be entered directing defendants to pay plaintiffs' counsel $41,750 for services and $10,986.05 for costs and expenses incident to the action. The award herein shall not constitute the personal, or individual, liability of the named defendants, or any of them, but they are directed to pay same from funds which the Mississippi Legislature, at its 1973 session, may appropriate for the operation of the Mississippi State Penitentiary."

I agree with Judge Gewin's dissent in *Newman* to the effect that regardless of the power of the trial court to enter a judgment for attorneys' fees against the State as a named defendant, which was not done in this case, this form of judgment would not amount to a violation of the prohibition of the Eleventh Amendment because the court's judgment requires merely that out of funds otherwise appropriated for the operation of the state prison, this amount is to be used for the payment of the attorneys' fees that were a necessary part of securing the prison inmates' right to be treated according to constitutional standards. A holding that the Eleventh Amendment does not bar an award of attorneys' fees in this case would, as stated by the dissent in *Newman:*

". . . comport with the fundamental rationale of this entire case. The state is not required to operate a prison system. But if the state incarcerates certain of its citizens, it assumes the burden under the Eighth and Fourteenth Amendments of providing decent and humane treatment for them. Having established a prison system, the state is obligated to appropriate funds for these purposes. Just as these moneys are available to provide food, clothing, shelter, and medical assistance, so should they be available to compensate court-appointed attorneys of prisoners seeking prospective relief in instances of state neglect or wilfull misconduct. If the state can be required to purchase sterile gauze and safe x-ray machinery, it can be required to compensate the [lawyers through whose services] the facts of the egregious neglect were placed before the court."

I would also embrace the reasoning of the Court of Appeals for the Second Circuit in the case of *Jordan v. Fusari,* 496 F.2d 646 (2nd Cir. 1974), where the court stated:

"It appears to us that the allowance awarded here, as part of an order granting injunctive relief, has at most the 'ancillary effect on the state treasury,' which *Edelman v. Jordan, supra* . . . characterizes as 'a permissible and often inevitable consequence of the principle announced in *Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714] . . .'"

I view both of the questions which the court is now remanding to the district court for further consideration to be purely questions of law. In light of the specific findings made by the trial court, it is not necessary for the court to remand this case for further proceedings as the court, with the concurrence of the dissenting judges, found to be necessary in *Newman.* The work of counsel in this case was completed nearly three years ago. The trial court entered its judgment for attorneys' fees, based upon a careful analysis of the obstructionary conduct of the defendants more than two and one-half years ago. I think it is an unnecessary imposition upon counsel in this civil rights action, without whose services the case could never have been developed, and upon both this Court and the trial court, and a waste of judicial time and effort for us not to decide the issue here and now. I would affirm the judgment of the trial court.