Nazareth GATES et al., Plaintiffs,

v.

John COLLIER et al., Defendants.

No. GC 71–6–K.

United States District Court,
N. D. Mississippi,
Greenville Division.

Feb. 3, 1976.

See also 407 F.Supp. 1117.

Roy S. Haber, Boulder, Colo., Ronald R. Welch, Jackson, Miss., Paul S. Lawrence, Dept. of Justice, Washington, D. C., for plaintiffs.

P. Roger Googe, Jr., Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This case is before us, on remand from the United States Court of Appeals for the Fifth Circuit, so that we may decide a delicate problem of constitutional interpretation. Does the Eleventh Amendment bar a federal court from assessing attorneys' fees and litigation expenses against a state defendant which has unsuccessfully defended, in bad faith and in a vexatious and wanton manner, a class action suit brought by penitentiary inmates? We hold that it does not.

This question has found its way to our door by a circuitous route, which must be briefly recounted. On February 8, 1971, this class action was commenced by inmates of Mississippi State Penitentiary at Parchman (Parchman) against the penitentiary superintendent, the members of the Mississippi State Penitentiary board, and the Governor of Mississippi. The complaint asserted that defendants' operation of Parchman and conditions of confinement at the penitentiary violated plaintiffs' First, Eighth, Thirteenth, and Fourteenth Amendment rights. The defendants, whose defense of the action was conducted from the first and throughout by the Attorney General of Mississippi, denied all constitutional violations. The United States then entered the case as plaintiff-intervenor under 42 U.S.C. § 2000h–2.

Extensive pretrial discovery—conducted in the main by plaintiffs—followed, together with numerous pretrial motions and pleadings and hearings of an interlocutory nature. On the eve of trial, which had finally been set for May 15, 1972, the parties agreed to forego oral testimony and submit the case upon the record already made through discovery, stipulations and offers of proof.

On September 13, 1972, we issued our findings of fact and conclusions of law on the merits,[1] upholding substantially all of the plaintiffs' original allegations. We found, on the basis of overwhelming proof, that black inmates were subject to patently impermissible racial discrimina-

---

1. *Gates v. Collier*, 349 F.Supp. 881 (N.D.Miss. 1972).

tion in their housing and work detail assignments, punishment, and opportunity to participate in rehabilitative programs; that inmate housing, health care, food services, and water and sewage facilities were so shockingly inadequate as to imperil the inmates' health and safety, in violation of the Eighth Amendment; that inmates were subject to almost unrestricted physical assaults and indignities perpetrated by other inmates and perpetuated by Parchman's trusty guard system, in violation of the Eighth Amendment; that punishment administered at Parchman was often brutal and so severe as to offend contemporary standards of human decency and the Eighth Amendment; that prison disciplinary procedures violated the Due Process Clause; and that the arbitrary censorship and suppression of inmate mail by prison officials violated the First and Sixth Amendments. We enjoined the unconstitutional practices and established timetables for those not immediately remediable.[2]

On July 25, 1972, plaintiffs moved for an award of attorneys' fees and expenses, supported by affidavits. Claim was made for $98,507.50 as a reasonable attorneys' fee, and for $13,624.46 as reimbursable expenses. After submission of briefs, we ruled on the attorney fee question on February 14, 1973, granting plaintiffs a substantial award based on a finding of fact that defendants had been unreasonable and obdurately obstinate in their defense of the litigation. *Gates v. Collier,* 371 F.Supp. 1368 (N.D.Miss.1973). As we said then:

> "In the instant case, we have no difficulty in finding that defendants' actions were unreasonable and obdurately obstinate. From commencement of the suit on February 8, 1971, defendants staunchly denied the existence of unconstitutional practices and conditions at Parchman. Defendants continued to adhere to this position at several lengthy evidentiary hearings of

an interlocutory nature. The position thus consistently maintained by defendants compelled plaintiffs' attorney to expend time and expenses which otherwise would not have been incurred. Consequently, in preparation of plaintiffs' case, plaintiffs' attorney engaged in extensive pre-trial discovery, made numerous trips to Parchman, interviewed hundreds of inmates, and submitted a plethora of motions and accompanying legal memoranda. We are convinced that only because of the overwhelming magnitude of evidence gathered by plaintiffs' attorney in cooperation with the Department of Justice in support of the allegations contained in the complaint, did defendants in effect recognize the futility of a full evidentiary hearing and submit the case on a virtually agreed record.

Defendants themselves concede that this is not a case involving unsettled questions of constitutional law. In their memorandum, defendants acknowledge that federal constitutional standards concerning inmate rights and prison administration are well established and are applicable to the present case. Defendants there stated:

> 'Needless to say, there are numerous cases on inmates' rights and involving prison operations. The questions that were presented are not novel. Certainly the questions of desegregation, mail censorship, due process rights, eighth amendment rights, and even questions involving the trusty system and its operation are not ones of first impression.' at p. 2.

As set forth in this court's Findings of Fact, the unconstitutional conditions and practices at Parchman have long existed as a result of public and official apathy, despite the notoriety of matters affecting prison administration stemming from prior reports to

---

**2.** Our merits determination was appealed by the defendants to the Fifth Circuit, but was affirmed in *Gates v. Collier,* 501 F.2d 1291 (5 Cir. 1974).

the State Legislature and widespread publicity of the news media. The court in its previous findings simply declared facts that were well documented and known to all interested in the subject. Constitutional rights of inmates may not be thwarted or ignored because of frequent changes in prison personnel and officials. We now hold that the state of the law in the area of prisoner rights was sufficiently settled so that it should have been unnecessary for this action to be brought; this suit was necessary only because of defendants' unreasonable refusal to comply with accepted constitutional principles. We are further convinced that the unnecessary delay, extraordinary efforts and burdensome expenses incurred incident to the resolution of this case were occasioned because of defendants' maintenance of their defense in an obdurately obstinate manner. Thus, plaintiffs' attorney is entitled to reasonable fees and expenses." 371 F.Supp. at 1371–72.

After making sizeable reductions in plaintiffs' claim for fees and expenses, we allowed the sum of $41,750 as a reasonable attorneys' fee, and an additional $10,986.05 as reimbursable expenses. The source from which these funds were to be paid was specifically delineated:

"An order shall be entered directing defendants to pay plaintiffs' counsel $41,750 for services and $10,986.05 for costs and expenses incident to the action. The award herein shall not constitute the personal, or individual, liability of the named defendants, or any of them, but they are directed to pay same from funds which the Mississippi Legislature, at its 1973 Session, may appropriate for the operation of the Mississippi State Penitentiary." 371 F.Supp. at 1373.

Defendants appealed this award, and the Fifth Circuit, on December 5, 1973, affirmed our assessment of attorneys'

fees and expenses against the State. *Gates v. Collier,* 489 F.2d 298 (5 Cir. 1973). At this juncture, the Supreme Court decided *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), holding that the Eleventh Amendment bars the federal courts from assessing retroactive judgments of money damages which must be satisfied by funds drawn from the treasury of an unconsenting state. *Edelman's* implications for awards of attorneys' fees and expenses were not lost on the Fifth Circuit, which granted the defendants' petition for rehearing en banc.[3] The en banc court, after almost a year of consideration of the important issues involved here, issued its per curiam opinion and judgment on October 29, 1975:

"The judgment of the district court as it relates to the award of attorneys' fees, *Gates v. Collier,* N.D.Miss., 1973, 371 F.Supp. 1368, is vacated and the cause is remanded for reconsideration consistent with supervening decisions of *Alyeska Pipeline Service Co. v. Wilderness Society,* 1975, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, and *Edelman v. Jordan,* 1974, 415 U.S. 651, 94 S.Ct. 1347, 30 L.Ed.2d 662." *Gates v. Collier,* 522 F.2d 81 (5 Cir. 1975) (en banc).[4]

Our assignment today, then, is to determine whether either *Alyeska* or *Edelman* mandates a change in our original assessment of attorneys' fees and expenses against the State of Mississippi. The en banc court did not, in its remand order, indicate any dissatisfaction with the findings of fact on which the award was based. Moreover, since those findings were expressly approved by the panel affirmance, *Gates v. Collier,* supra, 489 F.2d at 299–301, we will not at this late date disturb them, except as embellishments are made necessary by supervening Supreme Court decisions.

We are also faced with an additional attorneys' fee claim by plaintiffs' coun-

---

3. *Gates v. Collier,* 500 F.2d 1382 (5 Cir. 1975).

4. Judge Tuttle dissented, joined by Chief Judge Brown and Judges Wisdom, Gewin, Thornberry and Goldberg.

Although the majority speaks of vacation and remand only for our attorneys' fee award, the citation of *Edelman* convinces us that it was the court's intention to vacate and remand our award of expenses against the State as well.

sel. On March 18, 1974, plaintiffs' counsel made application for an attorneys' fee award covering the period from our merits determination in September, 1972, to the date of the motion. As justification for the award, plaintiffs' counsel claims that continued obstinacy by the defendants in implementing this court's decrees forced him to expend a great deal of additional time in effecting compliance. For these post-judgment legal services, he claims $13,501.25 as a reasonable fee.

### The Effect of Alyeska Pipeline Service Company v. The Wilderness Society

In *Alyeska,* the Supreme Court eliminated, in one stroke, the "private attorney general" theory for awarding of attorneys' fees which had enjoyed a hospitable reception since its genesis in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). In reaffirming the traditional American rule that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser",[5] the Court held that without express congressional statutory authority for counsel fee awards, the federal courts are not justified in making such awards in the usual case, and especially not under the private attorney general concept.

The Court did recognize a handful of situations in which an attorneys' fee might yet be awarded even without statutory authorization. Among those was the case in which "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" 421 U.S. at 258, 95 S.Ct. at 1622, 44 L.Ed.2d at 154. These limited exceptions to the general rule were, the Court reasoned,

> "unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, *unless forbidden by Congress* . . . ." 421 U.S. at 259, 95 S.Ct. at 1622, 44 L.Ed.2d at 154 (Emphasis added).

The question here is whether the defendants' conduct in defending the *Gates* litigation, as described in our previous findings, falls within the "bad faith" exception recognized in *Alyeska.* There can be no doubt that it does, as even a casual reading of our prior findings, set out above, will demonstrate.

Those findings reveal a purposeful defense stratagem of delay for delay's sake, and of the unconscionable and continued denial of "facts that were well documented and known to all interested in the subject," all of which resulted in a totally unwarranted continuation of unconstitutional practices at Parchman far past their date of termination had the defense been conducted in good faith. The manner by which defendants conducted this litigation, as already found by us, undeniably put plaintiffs' counsel to months of time and expense in discovery which need not have occurred. It remains evident that, in view of the settled state of the law at the time of the commencement of this action, *Gates v. Collier* was an action which need not have been brought; or, if brought, most certainly need not have been prolonged to the extent that it was. The unnecessarily vexatious defense interposed on behalf of the defendants, moreover, caused losses which cannot be recouped by this court: the added months in which Parchman inmates were forced to live under a host of unconstitutional conditions of the most brutal and dehumanizing character.

It is presently unfruitful to consider in what circumstances the "bad faith, vexatiously, wantonly, or for oppressive reasons" criterion enunciated in *Alyeska* is synonymous with the "unreasonable and obdurately obstinate" standard for attorney fee awards, or whether the Supreme Court would accept the latter formulation as an additional or alternative exception to the general proscription. The defense here satisfies both tests, and we have no hesitation in holding that an

---

5.  421 U.S. at 247, 95 S.Ct. at 1616, 44 L.Ed.2d at 147.

attorney fee award in the case sub judice is not barred by *Alyeska*.[6]

## The Eleventh Amendment Issue

A more substantial barrier to our attorneys' fee award may be erected by the Eleventh Amendment:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Judicial interpretation of this apparently plain language has, over the years, given the section a reach both greater and less than it appears to have. For example, despite the wording of the Amendment, settled constitutional doctrine has since established that the bar of the Eleventh Amendment does extend to suits brought against a state by her own citizens, as well as by citizens of sister states. *Parden v. Terminal R. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Moreover, Eleventh Amendment protection may apply even though a state is not a named defendant to an action. As the Supreme Court has explained:

"The nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding. . . . And when the action is in essence one for the recovery of money from the state, the state is the real,. substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Treasury Department of State of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

On the other hand, no Eleventh Amendment bar necessarily arises when the named defendant is a state official sued on a cause of action arising from his official activities as an agent of the state. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Finally, although the Amendment is couched in terms restrictive of federal judicial power, and not in the language of sovereign immunity, waiver of Eleventh Amendment immunity is possible, either expressly or by manifest implication. *Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 276–77, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *Kennecott Copper Corp. v. State Tax Commission,* 327 U.S. 573, 577, 66 S.Ct. 745, 90 L.Ed. 862 (1946); *Great Northern Life Ins. Co. v. Read,* supra, 322 U.S. at 54, 64 S.Ct. 873.

In the case sub judice, then, there is no doubt that the Amendment's applicability is not defeated by the Mississippi residency of the members of the plaintiff class. Further, since the awards here imposed were explicitly made payable from the treasury of the State of Mississippi, there is no doubt that the State is the real, substantial party in interest insofar as our award of attorneys' fees and expenses is concerned. What is in question is whether an award of this character, made incidental to federal court litigation seeking injunctive and declaratory relief from wrongs of constitutional dimension, is violative of the Amendment's prohibition.

---

**6.** As Judge Tuttle noted in his dissent to the remand order:

"I would think that no one would disagree with the proposition that recitation of the defendants' obstinate and unreasonable conduct in forcing the commencement of the suit in the first place, and in the manner in which they forced the plaintiffs to 'spend time and expenses which otherwise would not have been incurred. . . .', as a result of which, 'plaintiff's attorney engaged in extensive pre- trial discovery, made numerous trips to Parchman, interviewed hundreds of inmates, and submitted a plethora of motions and accompanying legal memoranda', met the standard of *Alyeska* of bad faith, vexatious, wanton, or oppressive conduct. The trial court's recitation both semantically and literally fits the exception saved to the district courts in *Alyeska*."

522 F.2d at 83.

Any discussion of the issue must begin with the reactivation of Eleventh Amendment awareness made apparent in *Edelman v. Jordan,* supra. *Edelman* was a class action against Illinois state officials to enjoin the wrongful withholding of welfare benefits from members of the plaintiff class. The district court found that state administration of the welfare program violated the Social Security Act and, in addition to granting prospective injunctive relief, required state officials to remit accrued welfare benefits wrongfully withheld *from members of the* plaintiff class. The court of appeals affirmed the retroactive award of wrongfully withheld benefits.

On certiorari, the Supreme Court reversed the retroactive award as violative of the Eleventh Amendment, holding that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman,* supra, 415 U.S. at 663, 94 S.Ct. at 1356. The Court took care not to imply that every federal court decree which entailed the expenditure of state funds would run afoul of the Eleventh Amendment. As Justice Rehnquist pointed out, suits brought to secure prospective injunctive and declaratory relief, if successful, often impose large burdens upon state treasuries which are not vulnerable to Eleventh Amendment attack:

"But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their pre-vious course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex Parte Young,* supra." *Edelman,* supra, 415 U.S. at 667–68, 94 S.Ct. at 1358.

The retroactive award in *Edelman* was infirm because

"[i]t requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those whose applications were processed on the slower time schedule at a time when petitioner was under no court-imposed obligation to conform to a different standard. While the Court of Appeals described this retroactive award of monetary relief as a form of 'equitable restitution,' it is in practical effect indistinguishable in many aspects from an award of damages against the State. It will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action. *It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.*" *Edelman,* supra, 415 U.S. at 668, 94 S.Ct. at 1358. (Emphasis added).

Since *Edelman,* no less than six circuits have considered the Eleventh Amendment status of awards of attorneys' fees or costs against state officials. These courts have divided nicely; two have held the Eleventh Amendment to bar such awards;[7] three others have found them to have only the ancillary effect on the state treasury permissible under *Edelman,*[8] while the Fifth Circuit has not yet adopted a final position.[9]

---

7. *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3 Cir. 1974); *Jordon v. Gilligan,* 500 F.2d 701 (6 Cir. 1974).

8. *Boston Chapter NAACP, Inc. v. Beecher,* 504 F.2d 1017 (1 Cir. 1974); *Fitzpatrick v. Bitzer,* 519 F.2d 549 (2 Cir. 1975); *Class v. Norton,* 505 F.2d 123 (2 Cir. 1974); *Jordan v. Fusari,* 496 F.2d 646 (2 Cir. 1974); *Thonen v. Jenkins,* 517 F.2d 3 (4 Cir. 1975).

9. Compare *Gates v. Collier,* 489 F.2d 298 (5 Cir. 1973), with *Named Individual Members of the San Antonio Conservation Society v. Texas Highway Dept.,* 496 F.2d 1017 (5 Cir. 1974); *Gates v. Collier,* 522 F.2d 81 (5 Cir. 1975) (en banc); and *Newman v. State of Alabama,* 522 F.2d 71 (5 Cir. 1975) (en banc).

In dissenting from the remand order in *Newman,* supra, at 74–77, Judge Gewin articulated

*Boston Chapter NAACP, Inc. v. Beecher,* supra note 8, involved a bill of costs assessed against state officials rather than an attorney fee award. Nevertheless, the court indicated, 504 F.2d at 1029, that it viewed costs as "analytically similar" to attorney fees for Eleventh Amendment purposes. In *Class v. Norton,* supra note 8, at 126, and *Thonen v. Jenkins,* supra note 8, at 7, attorney fee cases, the courts were likewise clear that there was no valid basis on which cost assessments and attorney fee awards could be distinguished under the Eleventh Amendment. This approach is persuasive, for there appears to be no significant difference between the two types of assessments for Eleventh Amendment purposes.

For a number of reasons, we align ourselves with those courts upholding attorney fees and costs awards against state officials.[10] First, and most directly, there is *Sims v. Amos,* 340 F.Supp. 691 (M.D.Ala.), aff'd mem., 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). In *Sims,* a reapportionment suit, the district court taxed costs and attorneys' fees against a host of Alabama state officials. There was never any question but that the state treasury would bear the burden of the award. On appeal, the Supreme Court affirmed the award summarily in the face of defendants' direct Eleventh Amendment challenge. Whatever may be the long-term significance of such summary dispositions, and to whatever extent the members of the Court may feel bound by them,[11] our duty is plainly commanded by *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223, 236 (1975). There the Court, speaking through Justice White, held unambiguously that summary dispositions of cases within its obligatory jurisdiction are decisions on the merits which inferior federal courts had best respect. As the Court said, "the lower courts are bound by summary decisions by this Court 'until such time as the Court informs [them] that [they] are not.'"[12] Should our reliance on *Sims* be misplaced in light of the Court's recent grant of review in *Fitzpatrick,* supra note 10, there are, we believe, other cogent reasons why the Eleventh Amendment should not be construed to bar the fee award.

what we believe to be a faultless approach to the constitutional issue at hand.

10. In proceeding to a merits determination of this issue, we are not unmindful that the Supreme Court has granted review in *Fitzpatrick v. Bitzer,* 519 F.2d 559 (2 Cir. 1975), prob. juris. noted 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404, 44 U.S.L.W. 3354 (1975), for the stated purpose of deciding the unconstitutionality of an attorney fee award made against state officials. We go forward today because, as it often does, the Supreme Court may well decide the case on a basis not dispositive of the issue sub judice. Indeed, there is difficulty in ascertaining the precise basis upon which the award in *Fitzpatrick* was made, although the attorney fee provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(k), lurk in the case and may provide a plausible explanation. In fact, it appears that if the mandate of *Alyeska,* which was not mentioned by the Second Circuit, is to be avoided in *Fitzpatrick,* it may well be only through the intercession of legislation specifically enacted pursuant to the Fourteenth Amendment. If so, this will give the case an entirely different cast from ours. See *Edelman,* supra, 415 U.S. at 694 & n. 2, 94

S.Ct. 1347 (Marshall, J., dissenting). Moreover, it has now been over 3½ years since plaintiffs' attorney performed the services for which he seeks remuneration, and further delay would be intolerable. In any event, should the Court rule squarely adverse to our decision today, defendants' remedy is swiftly and inexpensively obtained.

11. Justice Rehnquist is clearly unimpressed with the importance of such summary decisions. As he said in *Edelman,* supra, 415 U.S. at 671, 94 S.Ct. at 1359,

"summary affirmances obviously are of precedential value in support of the contention that the Eleventh Amendment does not bar the relief awarded by the District Court in this case. Equally obviously they are not of the same precedential value as would be an opinion of this Court treating the question on the merits."

12. 422 U.S. at 344, 95 S.Ct. at 2289, 45 L.Ed.2d at 236. For other expressions of the precedential value of summary dispositions of cases brought to the Supreme Court by way of appeal, see *Ohio ex rel., Eaton v. Price,* 360 U.S. 246, 247, 79 S.Ct. 978, 3 L.Ed.2d 1200 (1959); *Doe v. Hodgson,* 478 F.2d 537, 539 (2 Cir. 1973); *Port Authority Bondholders Protective*

*Edelman* reaffirmed that federal courts may lawfully direct relief which necessarily requires the expenditure of state funds, where such outlays are considered "ancillary" to the principal thrust of the litigation. No case could better illustrate this principle than this litigation affecting the Mississippi State Penitentiary. We have in our earlier orders granted relief which has required, and will continue to necessitate, the expenditure of substantially increased appropriations by the State to eradicate unconstitutional conditions at Parchman. Such relief, the constitutionality of which has been finally upheld on appeal, has impact of such magnitude on the state fisc as to dwarf the award at issue today.

In contrast, the constitutional problem with the monetary claim in *Edelman* was that it provided a substantial portion of the raison d'etre of the lawsuit. Indeed, *Edelman* was conceived and prosecuted as an action against the state treasury from the very beginning. In no sense could the retroactive payment of welfare benefits to the plaintiffs, by whatever name called, be said to be ancillary to the principal purpose of the litigation.

It is apparent on which side of the *Edelman* line fall the attorneys' fees and costs before us today. This action was brought to seek injunctive and declaratory relief from unconstitutional state actions; it was not an attempt to secure monetary damages for inmates. See *Edelman*, supra, 415 U.S. at 663, 94 S.Ct. 1347. Likewise, plaintiffs' attorney fee claim is not a suit for money damages "measured in terms of a monetary loss [to the plaintiffs] resulting from a past breach of a legal duty on the part of the defendant state officials." *Edelman*, supra, 415 U.S. at 668, 94 S.Ct. at

1358. No claim for attorneys' fees or expenses existed at the commencement of this action, and neither element constituted the primary relief sought. Plaintiffs could not have invoked this court's power to enjoin future illegal conduct without incurring the expenses of costs and attorneys' fees. *Fitzpatrick v. Bitzer*, supra note 8, at 571. Equally obvious, these expenses could not have accrued had the action not been brought.

The attorneys' fees and costs here are therefore expenses incidental to this litigation seeking "decrees which by their terms are prospective in nature." *Edelman*, supra, 415 U.S. at 668, 94 S.Ct. at 1358. They "represent a cost of achieving compliance with prospective decrees" [13] as surely as do the substantive decrees we have already issued. They cannot in any way constitute a compensatory award for past wrongs to the plaintiff inmates, who are proceeding here in forma pauperis, and who will not receive any benefit, direct or indirect, from such an assessment. Indeed, the Supreme Court has already held outright that the Eleventh Amendment is no bar to an assessment of court costs against an unconsenting state, when it made such an award in *Fairmont Creamery Co. v. Minnesota*, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927), a case unmentioned by *Edelman*.

There is one aspect of *Edelman*, however, which our previous discussion concerning the ancillary nature of the award does not address. That is the distinction drawn by the Court between expenditures necessitated by prospective relief as opposed to assessments which are retrospective in nature. *Edelman*, supra, 415 U.S. at 664–68, 94 S.Ct. 1347. Indeed, it may well be that the Court

*Committee v. Port of New York Authority*, 387 F.2d 259, 262 n. 3 (2 Cir. 1967); *Weisbrod v. Lynn*, 383 F.Supp. 933 (D.D.C.1974); *United States v. Citizens and Southern National Bank*, 372 F.Supp. 616 (N.D.Ga.1974); Stern & Gressman, Supreme Court Practice 197 (4th ed. 1969); Wright, Law of Federal Courts 495 (2d ed. 1970).

*Hicks* has no doubt put to rest the notion, embraced in the Ninth Circuit, that summary

disposition by the Court of a case within its "obligatory appellate jurisdiction has very little precedential significance." *Dillenburg v. Kramer*, 469 F.2d 1222, 1225 (1972); accord, *Serrano v. Priest*, 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241, 1264 & n. 35 (1971).

13. *Newman v. State of Alabama*, supra, 522 F.2d at 75 (Gewin, J., dissenting).

intended for the bar of the Eleventh Amendment to be determined, not by the "ancillary-primary" standard but by whether the federal court decree at issue is prospective or retrospective in application.

In this area, as in most Eleventh Amendment analysis, "the difference between the type of relief barred by the Eleventh Amendment and that permitted . . . will not in many instances be that between day and night." *Edelman*, supra, 415 U.S. at 667, 94 S.Ct. at 1357. Nevertheless, we are satisfied that attorneys' fees and cost awards, at least where allowable by *Alyeska*, partake more of the character of prospective relief sanctioned in *Edelman* than the retrospective money damage awards it proscribes. Neither attorney fees nor costs are retrospective in their purpose or general effect. No less than injunctive relief, these litigation expenses, though accruing from past conduct in defense, are designed to deter future conduct by the state in carrying on useless and vexatious litigation, contrary to settled constitutional principles. To that extent it would seem that the awards in the case sub judice are prospective and look to the future. See *Boston Chapter NAACP, Inc. v. Beecher*, supra, note 8, at 1029; *Class v. Norton*, supra, note 8, at 127.

■ Our reading of the cases convinces us that it is not the fact that state expenditures are judicially-mandated, which offends the Eleventh Amendment; nor is it the size of that expenditure.[14] What does offend our Constitution is rather the purpose for which the suit is brought and therefore the purpose for which the state expenditure is made. As *Edelman* demonstrates, even awards entitled "equitable restitution" may not be saved from Eleventh Amendment veto. This is so because regardless of the label attached to the award, any suit having as its primary motive a monetary recovery from state funds is one against the state.

■ We therefore hold that where, as here, an action is brought seeking prospective injunctive and declaratory relief which has only the "ancillary effect on the state treasury" permitted by *Ex parte Young* and expressly approved in *Edelman*, expenses incident to and arising from the prosecution of such litigation, including attorneys' fees and costs, may constitutionally be assessed against state defendants. Such awards are essential to the proper functioning of the federal judicial process[15] and ensure that the protection of the constitutional rights afforded by *Ex parte Young* and its progeny does not become illusory.

**14.** Consider the enormous burdens placed on state resources by such recent decisions as *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (demanding legislative reapportionment in accordance with the "one person, one vote" principle); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (requiring state-paid legal counsel for indigent defendants in felony prosecutions); *Brown v. Board of Education*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) (mandating desegregation in public education).

Conversely, that refunds of sums unconstitutionally exacted by the state are modest in amount does not vitiate the force of the Eleventh Amendment, where applicable. See *Jagnandan v. Giles*, 379 F.Supp. 1178, 1188 (N.D. Miss.1974) (three-judge court).

**15.** For example, Rule 37 of the Federal Rules of Civil Procedure prescribes sanctions available to the district court upon the failure of any party to provide discovery as required by the Rules. Among the most efficacious of the sanctions available is the award of expenses, including attorneys' fees, to the party seeking discovery. Are state defendants henceforth to be immune from this sanction? And if so, how is orderly discovery to be conducted against a recalcitrant state defendant whose failure to provide discovery promptly may well go unpunished?

We also note the attorneys' fee provisions of 42 U.S.C. § 2000e–5(b) (employment discrimination), 20 U.S.C. § 1617 (discrimination in education), and 42 U.S.C. § 1973*l*(e) (discrimination in voting). Are these statutes now to be held unconstitutional when sought to be applied to state defendants? Questions as to the power of Congress to act vis-a-vis the Eleventh Amendment may no longer haunt the lower federal courts after the Supreme Court's disposition of *Fitzpatrick v. Bitzer*, supra, note 10.

■ This brings us to a consideration of the claim of plaintiffs' counsel for an additional award of $13,501.25 to cover post-judgment legal services rendered from September, 1972, to March, 1974. We must reject this claim because we are satisfied that the actions of the defendants during that period—following this court's initial judgment—did not approach the "bad faith, vexatiously, wantonly, or for oppressive reasons" standard which characterized their behavior before that time.

To be sure, plaintiffs' counsel did contribute much to the effectuation of the court's decrees during this postjudgment period. Nevertheless, the delays which accompanied many of the ordered changes at Parchman were due to the enormity of the task and the initial confusion and lack of available state resources and not to further calculated resistance by the defendants. Moreover, on several occasions plaintiff-inmates endeavored to cite the defendant officials for civil contempt for noncompliance with our judgments and after evidentiary hearing their motions were found to be groundless. In this circumstance, *Alyeska's* mandate is conclusive, and there being no statutory or valid judicial basis upon which to proceed, we cannot award plaintiffs' counsel the supplemental fee he seeks.

■ Defense counsel suggests that, the Eleventh Amendment aside, imposition of liability on the State's penitentiary appropriation for payment of attorneys' fees and costs in this case is inappropriate. They note that since commencement of the action the nominal defendants have changed often, as new penitentiary superintendents, penitentiary board members and even governors come and go. From this they reason that no one defendant or set of defendants can be held responsible for conduct of the defense of this action, and therefore no just award of attorneys' fees or

costs can be made, nor an equitable apportionment devised between the individual officials.[16] Defendants' argument does indeed prove too much, and illustrates why only the State may be properly assessed with responsibility for payment of the award.

As to the bad faith nature of the defense in this action, there can be no doubt. And as defendants argue, the identity of the named defendants did change often, but without significant effect upon the proceedings.

As earlier noted, the Attorney General of Mississippi has from the first assumed full control of the defense of this action. He had unquestioned authority to do so, invested as he is by state law with "the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest." Miss.Code Ann. § 7–5–1 (1972). Further, as a constitutional officer vested with all powers which the attorney general exercised at common law, the attorney general was fully authorized to adopt whatever strategy he chose in this suit of undoubted statewide significance without regard to the wishes of his nominal clients, who had no power to discharge him or assume control through private counsel. *Wade v. Mississippi Cooperative Extension Service*, 392 F.Supp. 229 (N.D.Miss.1975), and cases cited therein. Moreover, at no time during the course of this litigation did privately-retained counsel appear on behalf of any of the named defendants, who looked to the attorney general for the conduct of their defense. Since the action was defended by the State through the aegis of its attorney general, who alone under state law had legal authority to act, it must be the State, and not individuals, which must bear the incidental burden of the attorneys' fee and cost awards.

We therefore hold that neither *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44

---

16. Plaintiffs' counsel advances the related argument that, irrespective of the Eleventh Amendment, the court should impose personal liability upon the named defendants collectively and they be made to pay the claim if the State is protected by the Eleventh Amendment. For reasons noted herein, that would be an unjust resolution.

352

L.Ed.2d 141 (1975), nor *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), bars imposition of an award of attorneys' fees of $41,750, together with costs of $10,986.05, against the State of Mississippi, payable from current appropriations for the Mississippi State Penitentiary or from such other funds as may be provided by law.

An order shall be issued accordingly.